Johnson, Adm'r, *v.* Dexter.

---

LYMAN W. JOHNSON, *Administrator of* DANIEL DEXTER, *v.* MARIA DEXTER.

*Evidence. Statute.*

Where one of the parties to an account dies and his administrator brings an action on book against the other party, the latter cannot, under the provisions of § 24, ch. 36, p. 327, G. S., be a competent witness to testify to a settlement with the intestate of said account. The restriction under said section applies to the party living, whether he be plaintiff or defendant, and though the action was pending, when said section was enacted.

The act of 1864, No. 31, though in form giving construction to said section, can be regarded as having no other effect than to change the law from the passage of the act itself.

---

Johnson, Adm'r, v. Dexter.

---

BOOK ACCOUNT.  The auditor reported that the plaintiff presented an account, and presented and proved the account book of his intestate, and also introduced other testimony tending to sustain a part of the items of said account and rested.

The defendant presented no account on her part, and stated that her defence to the plaintiff's account was that the same had been settled and paid by her in the life time of the intestate, though no evidence of a settlement appeared on his books.

The defendant is the widow of Silas Dexter, and never kept any book of accounts.  Daniel and Silas Dexter were brothers, and lived for many years in Wardsboro, on land owned by them in common, and much of their business was carried on in partnership, and their relations were of the most fraternal and confidential kind.  Silas died in 1850, leaving the defendant, his widow, with a family of young children, in rather straitened circumstances.  Daniel assisted the defendant in the settlement of her husband's estate, and after that till his own death in 1862, acted as her friend, adviser and assistant, in all her affairs, carrying on the common land which remained undivided and accounting to her for her share of the profits, and the greatest trust and confidence existed between them.  The plaintiff's account extends from April, 1851, to April, 1857.  The defendant offered herself as a witness, to prove that she had had repeated settlements with the intestate, the last of which was subsequent to the last of the charges in the plaintiff's account, and that said account was wholly paid.  To the admission of the defendant as a witness for such purpose, the plaintiff objected, but she was admitted, to which the plaintiff excepted.

The auditor finds mainly, on the testimony of the defendant, that the intestate and defendant were in the habit of settling from time to time, the defendant thereupon paying to him what was due, and that the whole account presented was settled and paid.  No receipts ever passed between the parties owing to the mutual trust and confidence existing between them.  The defendant did not know that the intestate ever entered any charge against her, on his book, and such charges were in fact intended by the intestate simply as memoranda to assist his memory in settling with the defendant, and his omission to note the several settlements on his book was mere

negligence arising from the same confidential relations between them. This suit was commened in March, 1863, and trial before the auditor November 11th, 1863.

On the foregoing report the court, at the April Term, 1864, BARRETT, J., presiding, rendered judgment, *pro forma*, for the defendant to recover her costs,—to which the plaintiff excepted.

*A. Stoddard*, for the plaintiff.

*Charles N. Davenport*, for the defendant.

POLAND, Ch. J. We have entertained great doubts whether the question which has been argued before us, is really so raised by the exceptions that we ought to consider it. The exception taken in the county court, was to the rendition of a judgment by the court upon the report of the auditor. Properly that judgment must be treated as founded upon the facts which the auditor has found and reported, and no question is made but those facts would support the judgment which the court rendered. Where the real objection is that the referee or auditor allowed improper testimony to be introduced before him, the attention of the county court should be called to it by a special exception, or a motion to recommit, and if instead of that the party goes to a hearing upon the facts found, he must be understood as waiving all objection to the testimony introduced. Although improper evidence may have been allowed, the party may be satisfied that the finding of facts is as favorable as he could hope for on another hearing, and therefore may not desire to have the case retried by the referee or auditor. In such a case it would be manifestly unjust to allow a party when his case gets into the supreme court, to raise an objection of this preliminary and interlocutory character.

In an ordinary case we should listen to no such question in the supreme court, unless the record showed affirmatively that it was insisted on in the county court, and determined against the excepting party.

But in the present case the report shows no other question whatever, about which there could have been any question in the county court, and the counsel have not made any question but that the question raised and decided below was as to the admissibility of the defendant as a witness, so that we infer the exceptions would be

amended by the judge who decided the case, and therefore we have decided to consider it to be properly here.

Was the defendant properly allowed to testify to the settlements she had made with the plaintiff's intestate of his accounts in his lifetime? We think she was not. The other party to the cause of action was dead, and the action was prosecuted by his representative. The settlements and payments she testified to were not made with any person living who could testify, nor made since the plaintiff was appointed administrator, nor was her testimony to prove the hand-writing of her charges, or when they were made, which are the only exceptions to the exclusion of one party as a witness when the other party to the cause of action is dead or insane.

Strictly and grammatically construed, the living party in an action on book account, would not be entitled to the benefit of the exceptions from the exclusion named in the first proviso, and could only testify to the handwriting of his charges and when they were made. This subject was before the court on the present circuit in Rutland county, and after a careful consideration it was held that taking the whole statute together, with the history of the legislation on this point, the true intent and meaning was, not to exclude parties on book from testifying in the excepted cases mentioned in the first proviso, but to allow them that right, and the further right to testify to their own charges as stated in the second proviso.

These two provisos are to some extent dependent upon each other, and the language of the first proviso must be understood as incorporated into, or referred to in the second. The second one says nothing expressly about one party to the contract or cause of action being dead, but it clearly has reference to the commencement of the first, which says, " when one of the original parties is dead, or insane, the other party shall not be admitted, &c.," and the words used in the second, " party living," show clearly that all the exceptions of both provisos were to apply in cases where the other party was dead or insane.

The general purpose of the provisos is entirely apparent; to exclude one party from being a witness when the other was dead and could not be, with certain exceptions, not within the general supposed mischief, and of supposed necessity, when the facts were

peculiarly within the knowledge of the party living. It is not claimed by the defendant but that it was fairly within the power of the legislature to prohibit a party from testifying in a case, where by the previous law he could testify, and the action pending at the time of the passage of the prohibitory law ; and there does not seem any good ground to deny the power, as it is merely changing the course of proceeding and a rule of evidence, which are regarded as belonging to the class of legal remedies, and not of legal vested rights, although such change may have an important influence upon the rights of the parties. The propriety and wisdom of such change affecting suits already pending, and transactions already passed, admit of much more doubt.

But the defendant claims that by the true construction of the second proviso, she was properly admitted to testify to the settlements between her and the intestate ; that the second proviso was only intended to limit the testimony of the living party in an action of book account to cases where such party is claimant against the estate, or representative of a deceased party, and to leave such party the right to testify fully as to all matters of defence to a claim made against him by such representative or estate. But the language of the whole section is too plainly otherwise to allow us to entertain such construction, however great the apparent hardship may be in the particular case, or class of cases.

The language used, " where one of the original parties shall be dead, the other shall not be admitted, &c.," clearly shows that the restriction was intended to apply equally to one party as well as the other, and whether the party deceased was plaintiff or defendant, and that the living party was to be precluded from testifying, except to the extent of the exceptions, equally, whether prosecuting a claim against a deceased party, or defending against a claim in favor of the party deceased.

It is easy to perceive how unfairly it may operate, in case of a claim on book prosecuted in favor of an estate, but this cannot vary the express language of the statute, it only shows the danger of meddling with settled rules of law and course of legal proceedings, and how far short legal reformers frequently come of their aims, in

endeavoring to make the operation of the law more just and equal than before, by legislative change.

The act of 1864, though in form giving a construction to this section of the general statutes, can be regarded as having no other effect than to change the law from the passage of the act itself, and probably was not supposed by the framers, to have any greater effect.

By that act the defendant would now be a legal witness upon another trial to the very facts she testified to before, and we have entertained doubts whether we ought to reverse the judgment, because she was improperly admitted before, when on another trial the plaintiff would have her evidence again to encounter. But on consideration, we think it would not be consistent with our legal duty to take such course, and regard this as an error which could not have prejudiced the plaintiff. He might have relied on her not being admitted, as he had the right to, and not have prepared himself with evidence to contradict and overcome her testimony, which he may do on another trial. There are cases in our reports, where the court have said, that though there had been an error committed on the former trial, they would not reverse the judgment and grant a new trial, because it was apparent that it could be of no benefit to the party asking it. But those were cases, where there was some positive legal impediment in the way of the party's ever prevailing, so that the court could say with legal certainty the party was not prejudiced. As a matter of fact it will very likely turn out that a new trial will be of very little service to this plaintiff; it would rather seem that it ought not to, but we cannot say he is not legally entitled to it.

Judgment reversed and case remanded.