WILDER *v.* STANLEY, AND THE AMERICAN HONE AND BOX CO., TRUSTEES.

### *Contract. Negligence. Practice.*

The trustees, wanting work done, wrote to R., whom they had employed some, to that effect, and he, being unable to do it, told defendant of it, saying that he should expect to receive $3 a day and his expenses for the work, and that if defendant wanted to do it, he would write to the trustees, introducing him, and did so. Defendant went to do the work, expecting to receive therefor the wages named by R., and began to work on June 3, 1873, but under no express contract with the trustees as to the rate per day at which he should be paid, and the trustees did not ask him what he should expect to receive. But on August 1, defendant notified them that he should ask $3 a day and his board, which was the same as $3.50 a day without board. The trustees did not say they would pay that, but allowed defendant to continue at work until April 29, 1874, without anything further being said about wages. *Held,* that the trustees were bound to pay defendant at the rate of $3.50 a day for the whole period, having, as to the time before August 1, impliedly adopted the terms named by R., and as to the rest of the time, bound themselves by retaining defendant after having been notified by him that he should ask pay at that rate.

The defendant, in the course of his employment, made a lathe for the trustees, which, partly by reason of the faultiness of the plan prescribed by the trustees, partly by reason of the unsuitableness of the tools and machinery furnished by the trustees for its construction, and partly by reason of the defendant's unskillfulness, was, when completed, unsuited for the work for which it was designed, and worthless. In the course of his work, a chain-lathe belonging to the trustees was carelessly broken by him. The trustees claimed damages for their loss in those two ways. *Held,* that the sum claimed as damages for the worthlessness of the lathe, should not be deducted from defendant's wages, but that the sum claimed for the loss through the breaking of the chain-lathe, might be.

Objections to the admission of testimony by a commissioner appointed to take the disclosure of a trustee, are waived if not insisted on by way of exception to the report, or by way of motion to set aside or recommit it.

TRUSTEE PROCESS. The commissioner found and reported substantially the following facts:

The trustees, wanting work done, wrote to one Ramsey, whom they had employed some, to that effect, and he, being unable to do it, told the defendant about it, saying that he should expect to get $3 a day and his expenses for such work as was to be done, and that if defendant wanted to do the work, he would write the trustees, introducing him, and he did so. The defendant went to do the work, expecting to get $3.50 a day, and began work on June 3, 1873, but made no express contract with the trustees as

14

to the rate a day at which he should be paid, and the trustees did not ask him what he should expect to receive. But on August 1, 1873, defendant notified the trustees that he should ask $3 a day and his board, which was the same as $3.50 a day without board. The trustees did not then say they would give that, but allowed defendant to keep at work until April 29, 1874, without anything further being said about wages, and then defendant stopped, having worked two hundred and seventy days, and earned, at $3.50 a day, the sum of $945, which, with $1.25, due to the defendant for his expenses while on a journey for the trustees, made $946. 25, the whole sum due to him. The trustees had paid the defendant $584.74. Trustees also claimed damages occasioned by defendant's unskillfulness in making lathes, and for the breaking of a chain-lathe. It appeared that the trustees wanted four lathes, such as upon examination the defendant said he could make, and that defendant was accordingly set at work to make them. He finished one and set it up; but it would not do the work for which it was designed, and was worthless. It appeared that the trustees' foreman and agent, who was skilled in such work, was present while the lathe was being made, and might have corrected defendant's mistakes, but did not; and that the worthlessness of the lathe was due in part to the faultiness of the plan for its construction prescribed by the trustees, in part to the unsuitableness of the tools and machinery furnished by them for its construction, and in part to the unskillfulness of the defendant. The trustees lost by reason of the defendant's unskillfulness in that behalf $67.49, and $25 by reason of his carelessness in breaking the chain-lathe — in all, $92.49.

The commissioner also reported certain testimony in detail, to his admission of which objection was made; but as no question was made at the hearing upon the report concerning its admissibility, it is not stated. The court, at the December Term, 1875, Ross, J., presiding, rendered judgment against the trustees for $136.02, and interest thereon from April 29, 1874; to which both plaintiff and defendant excepted.

*Harry Blodgett* ( *Belden & Ide* with him ), for the plaintiff, cited *Willey* v. *Warden*, 27 Vt. 655; *Graham* v. *Stiles*, 38 Vt. 578; *Johnson, admr.* v. *Dexter*, 37 Vt. 641; *Perry* v. *Whitney*, 30 Vt. 390.

*R. F. Parker*, for the trustees, cited *Allen* v. *Hooker*, 25 Vt. 137; *Smith* v. *Foster*, 36 Vt. 705; *Andrews* v. *Eastman et al.* 41 Vt. 134.

The opinion of the court was delivered by

ROYCE, J. This case was heard on the report of a commissioner appointed to take the disclosure of the trustees. It is claimed that the commissioner erred in admitting certain testimony which is detailed in the report. But it does not appear that any question was raised or decided in the County Court in relation to the admissibility of that testimony. If the trustees wished to insist upon their objection to its admissibility, they should have filed exceptions to the report, based upon their objection to such testimony, and interposed it by way of objection to the acceptance of the report, or by motion to set aside or recommit it; so the question is not regularly before the court. *Graham* v. *Stiles et al.* 38 Vt. 578; *Perry* v. *Whitney*, 30 Vt. 390; *Johnson* v. *Dexter and Dexter*, 37 Vt. 641.

The only remaining question is as to the extent of the trustees' liability. In ascertaining the amount due from the trustees to the defendant for his wages and board, the commissioner allowed him at the rate of $3.50 per day for the entire period of his service; and the question presented is, whether, from the facts found, he is entitled to that rate of compensation, or is only entitled to recover upon a *quantum meruit*.

In considering this question, the time of his service should be divided into two periods, — the first embracing the time from the third of June, 1873, when he commenced work, to the first of August of the same year. During this period there was no contract as to compensation between the defendant and trustees, unless what transpired between the defendant and Ramsey constituted a contract that was binding upon the trustees. The trustees wrote Ramsey that they wanted a man to do some work for them. Ramsey told the defendant about it, and that he should expect to get $3 per day and expenses for such work; and if he wanted to go and do the work, he would write a letter to the trustees, introducing him, and did so. No inquiry was made of the defendant by the trustees about the price he expected to receive for his services, and he was expecting to receive the rate of wages named by Ramsey. Although Ramsey had no authority from the trustees to employ the defendant, and bind them to any contract he

might make, yet, after having written Ramsey that they wanted a man, and the defendant coming to them with a letter of introduction from Ramsey, their taking him into their service, and retaining him for such a period of time, we think was an adoption by them of the terms, as far as the rate of compensation was concerned, fixed and agreed upon between the defendant and Ramsey.

In 1 Liverm. Principal & Agent, 44, it is said : If I make a contract in the name of a person who has not given me an authority, he will be under no obligation to ratify it, nor will he be bound to the performance of it; but if, with full knowledge of what I have done, he ratify the act, he will be considered to have contracted originally by my agency," for the ratification is equivalent to an original authority. And it is said by BULLER, J., in 2 Term, 209, that the assent or acquiescence by which the principal shall be bound, must be given with knowledge, or the means of acquiring knowledge, of all the circumstances of the case. As to the second period, commencing on the 1st of August, there can be no doubt as to the rate of compensation the defendant was entitled to. He notified the trustees on that day, that his price was $3.00 a day and board, and if after this notice they retained him in their service, it would be under an implied promise to pay him at that rate. The damage that the trustees sustained in consequence of the unskillful work of the defendant on the lathes, from the facts found by the commissioner, cannot be deducted from his wages. These damages were attributable as much to the faulty plan for their construction prescribed by the trustees, and their neglect to furnish the defendant suitable tools and machinery with which to do the work, as to any unskillfulness on his part. The damage the trustees sustained by the breaking of the chain lathe, stands upon a different footing. That was occasioned wholly by the defendant's carelessness, and should be allowed. The defendant's claim against the trustees is allowed at $946.25, from which the payments made to him, and the damages to the chain lathe ($25.00), are deducted, leaving the sum of $338.41, due from the trustees to the defendant. And the judgment of the County Court is reversed, and judgment that the trustees are liable for the above amount, and interest since the 29th of April, 1874.