## OTILLIA STEPHAN, Respondent, v. XAVIER METZGER, Appellant.

### St. Louis Court of Appeals, July 22, 1902.

1. **Evidence: ITEMS OF ACCOUNT.** Plaintiff sued upon an account written on the flyleaf of a bible. The flyleaf was afterwards destroyed by a child, whereupon plaintiff and her daughter arranged the fragments and the daughter transcribed the original record, translating it at the time into English. A number of items thus transcribed were copied literally from the original, some of the transcribed items being aggregates of similar items of the same general class which appeared in the first document. At the trial the first-mentioned entries were admitted in evidence along with plaintiff's tstimony as to the items; and the second group the court allowed to be used to refresh the memory of the witnesses who took part in the preparation of the copy and were acquainted with the original transactions. *Held*, that the ruling was correct under section 4653, Revised Statutes 1899.

2. ———: ———: **STATUTORY CONSTRUCTION.** Loans of money are admissible items of book account under the Missouri statute (section 4653), if otherwise admissible.

3. ———: ———: ———: **BOOK ACCOUNT: CONTEMPORANEOUS TRANSACTIONS.** Original entries of book account are admissible testimony when authenticated as memoranda contemporaneous with the transactions recorded.

4. ———: ———: **RES GESTAE: EVIDENCE.** Entries of book account are admissible in evidence as part of the *res gestae* of the events they describe. They may be supported by other evidence of the facts recorded.

5. **Book Account, What It Is: STATUTORY CONSTRUCTION.** The flyleaf of a book containing only one account is a sufficient "book of account" within the meaning of section 4653, Revised Statutes 1899. The origin and history of section 4653, Revised Statutes 1899, is stated by the court.

Vol 95 app—39

6. **Lost Document:** SECONDARY EVIDENCE: DISCRETION OF TRIAL COURT. Where an original document containing an account is destroyed, the admissibility of secondary evidence thereof is an issue resting peculiarly within the sound judicial discretion of the trial judge.

7. ——: ——. The voluntary destruction of an original manuscript by an interested party does not of itself preclude the introduction of secondary evidence thereof; if done innocently secondary evidence will not be excluded.

8. **Error:** EVIDENCE. Where an entry is admitted in evidence to support a fact which the other party to the suit admits, the error is harmless where the entry was not properly admissible as original evidence.

9. **Objection:** PRACTICE, TRIAL. Where an objection to a paper in its entirety is made on the ground of incompetency, but some parts thereof are admissible, the objection is bad, in default of particular specification of the parts to which the objection is applicable.

10. **Proof:** COMPETENT TESTIMONY. A judgment should not be reversed by the refusal of an instruction whose substance is otherwise given to the jury.

12. **Testimony:** INFERENCE. Testimony of a fact may be either direct or founded on reasonable inference from other evidence.

13. **Instruction:** EVIDENCE: PRACTICE, TRIAL An instruction should not be given to the jury in the absence of evidence to prove the facts on which it is based.

14. **Weight of Evidence:** VERDICT: OBJECTION: PRACTICE, TRIAL. The objection that a verdict is against the weight of evidence is not available in an action at law on appeal.

15. **Construction of Statutes of Sister States.** The prior construction of a statute borrowed in part from another State, is of persuasive aid in construing the enactment in this State.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Koehler & Reiss* for appellant.

(1) The court erred in permitting the so-called "account" to be used in evidence and further erred in permitting witness to use the so-called "account" for the purpose of refreshing her memory. Milling Co. v. Walsh, 108 Mo. 281. (2) The original "account," if any, so kept, could not have been offered in evidence because it clearly appears from the account itself and the evidence, that in part, at least, the entries were not made at or near the time of the purported transaction. Milling Co. v. Walsh, supra; Martin v. Nichols, 54 Mo. App. 594; Drug Co. v. Graddy, 57 Mo. App. 41; Cummings v. Nichols, 13 N. H. 420. (3) Books of account, to be admitted in evidence, must be books of original entry. Copies may be used where destruction of books of original entry is shown, and evidence showing copy is clear and undisputed. Milling Co. v. Walsh, supra. (4) Witness should not have been permitted to use the so-called "account" to refresh memory, inasmuch as it was not a memorandum made by herself nor made at the time of the purported transaction. Greenl. Ev. (14 Ed.), sec. 438. (5) The court erred in refusing to give instruction asked by defendant covering defendant's claim that settlement between plaintiff and defendant was had. Defendant is entitled to an instruction covering any theory of defense to which there is some substantial evidence. Stanfield v. Loan Ass'n, 53 Mo. App. 595; Laughlin v. Gerardi, 67 Mo. App. 372; Carder v. Primm, 60 Mo. App. 423; Devitt v. Railroad, 50 Mo. 302.

*Virgil Rule* and *Bland & Cave* for respondent.

(1) The loss of the original account having been proven, the court properly permitted exhibits "A" and "B" to be used in evidence where they were shown to be exact copies of the original, and to be

used for the purpose of recalling to the memory of the witness the contents of the original where the exhibits were not copies. Milling Co. v. Walsh, 108 Mo. 281. (2) As the uncontradicted evidence shows that the entries in the original account were all made contemporaneously with the transactions, it would have been admissible in evidence. Milling Co. v. Walsh, supra; Martin v. Nichols, 54 Mo. App. 594. (3) Exhibits "A" and "B" having been made by the plaintiff and her daughter acting together, and each seeing that they were correct, and having been made at the time of the destruction of the original, were properly used to refresh the memory of the witness as to the contents of said original.

BARCLAY, J.—This action was begun before a justice of the peace in the city of St. Louis, upon the following statement (omitting caption and signature):

"Plaintiff states that defendant is indebted to her for cash borrowed from plaintiff at various times as shown by the following account, to-wit:

"St. Louis, Mo., February 25, 1899.
Xavier Metzger, to Ottillia Stephan:    Dr.
March 14, 1881, to cash borrowed.........$500 00
July, 1884 to July 3, 1885, to cash borrowed. 361 50

Total .............................$861 50
July, 1884, credit by cash ................. 350 00
Balance ............................ 511 50
To interest from July 3, 1885, to date....... 518 72

Total ............................$1,030 22

| Credits. | Principal | Interest. |
|---|---|---|
| September 2, 1885 .........$16 00 | | $12 88 |
| August 20, 1886 ............ 20 00 | | 15 00 |

Stephan v. Metzger.

| | | | |
|---|---|---|---|
| February 7, 1887 .......... | 15 | 00 | 10 80 |
| February 15, 1887 ......... | 8 | 00 | 5 76 |
| December 24, 1889 ......... | 20 | 00 | 11 00 |
| August 22, 1891 ........... | 12 | 00 | 5 40 |
| May 2, 1892 .............. | 10 | 00 | 4 05 |
| July 18, 1893 ............. | 11 | 00 | 3 68 |
| December 23, 1893 ......... | 10 | 00 | 2 50 |
| August 10, 1897 ........... | 4 | 00 | 36 |
| November 15, 1897 ......... | 20 | 00 | 1 70 |

$146 00    $73 13—219 13

Balance due ..........................$811 09

"Plaintiff states that demand has been repeatedly made on defendant for the amount due from defendant to plaintiff, but that he has neglected and refused to pay same, and plaintiff voluntarily remits the amount due over and above five hundred dollars and asks judgment against defendant for that sum."

In the justice's court plaintiff had judgment for $500. Defendant duly appealed to the circuit court where the cause was tried anew before Judge Hough with the aid of a jury. A verdict and judgment in that court were given for plaintiff for $500.

Defendant appealed in the usual way.

Defendant is the plaintiff's brother. Plaintiff's testimony is that she loaned him $500, March 14, 1881, and began an account with him upon a flyleaf in a Bible. It appears that a number of items of account followed the one just mentioned, during the course of many years. Each was entered about the time of the transaction recorded. Finally, in 1896 or 1897, the flyleaf was torn out and severed into fragments by the plaintiff's little granddaughter, a child about two years of age. The entries were originally in German. After the leaf was torn, as described, the plaintiff and her

daughter (mother of the child) immediately gathered the pieces together and copied the entries thus:

150.00, March 14, 1881.
 50.00, School, July, 1884.
 40.00, Moline, Ill., 1884.
 15.00, Steamboat picnic, August, 1884.
 45.00, Law suit exp. in Ill., 1884.
 28.00, 3 times sick, doctor and drug, 1884.
 15.00, Clothing, November, 1884.
 20.00, 4 times picnic, Grown & *Stoecklin*, 1884.
 35.00, 4 Hunting trips, 1885—85.
  6.50, 1 pair rubber boots 1884—5.
  8.00, Shoes & Slippers, 1884—5.
 65.00, Daily exp. for school 1884—85.
  4.00, 1 pair of pants, May 4, 1885.
  5.00, 1-2 dozen shirts—2 linen collars, May 15, 1885.
 18.00, 1 1-2 year shave & hair cut, 1884—85.
  5.00, Underclothing, July 3, 1885.
  2.00, Marriage License, July 3, 1885.

511.50
150.00

361.50

The plaintiff read off the items in German and her daughter wrote them down as above in English on a sheet of paper.

There were some deviations from exact copy. They will be described later. When the copy was obtained by that process the old scraps were thrown in a coalhod and burnt up. No controversy between plaintiff and defendant had then arisen, as plaintiff's evidence goes.

The court admitted in evidence for plaintiff those

entries which were testified to be exact copies of the first entries; the other entries the plaintiff and her daughter aforesaid were allowed to use to refresh the memory, but they were excluded as testimony.

Those rulings were against defendant's objection on the ground of incompetency, and exceptions were saved. The copy was called "Exhibit A."

Plaintiff also testified that on the reverse page of the original flyleaf was a list of credits on account of payments by defendant at the dates named; that they had been entered at the time of the payments and were copied in the same manner as the items already mentioned and in like circumstances after the leaf had been torn, except the last two entries which were original, made after the destruction of the flyleaf.

The list of credits was called "Exhibit B" in the trial court. It is as follows:

$16.00, 2 September, 1885.
 20.00, 20 August, 1886.
 15.00, 7 February, 1887.
  8.00, 24 December, 1889.
 12.00, 22 August, 1891.
 10.00, 2 May, 1892.
 11.00, 18 July, 1893.
 10.00, 23 December, 1894.
  4.00, 10 August, 1897.
 20.00, 15 November, 1897.

Plaintiff's evidence tended to show that all the original entries were made contemporaneously with the transactions they recorded, except in the instances to be noted further on.

Plaintiff testified that when she loaned defendant the $500 he was about to open a saloon; that he agreed to pay her own boardbill and to pay the rent of her abode if she would do his housekeeping meanwhile; and that she agreed to do, and did so.

The credit of $350 (July, 1884) in the statement filed before the justice was part of the proceeds realizd by defendant when he sold the saloon at the time mentioned, according to plaintiff's testimony.

Plaintiff verified the items in the two exhibits, as will be fully shown hereafter.

The last item of loan to defendant, plaintiff declared was of date July 3, 1885, about the time of defendant's marriage. The last item of credit given defendant in account was dated November 15, 1897. The main item (the first) in plaintiff's account, as contained in her statement filed before the justice of the peace, was a charge for cash borrowed ($500) of which part ($350) was returned by defendant in July, 1884. These two items were treated as one in the copy from the original flyleaf entries as a charge against defendant of the difference ($150) as of March 14, 1881, as may be inferred from plaintiff's own testimony and that of Mrs. Thomas, her daughter. We gather that the first item of the original account was a charge of $500, offset in part by the later item of credit by $350, and that the first item of "Exhibit A" was a balance.

The items "4 times picnic," "4 hunting trips," "Daily exp. for school," "1 1-2 year shave and hair cut," were likewise consolidated in "Exhibit A," and were not admitted as evidence under the ruling of the court, though allowed to be used by the parties (who together verified and prepared them) to refresh the memory.

It does not appear necessary to fully recite the other testimony for plaintiff. It tended to support the finding and judgment she recovered.

The defendant positively denied the original loan of $500 as asserted by plaintiff, as well as the other alleged loans. His contention was the plaintiff put the $500 into his hands to invest for her in a saloon, which he did, and that he fully accounted to her for all of it;

that he gave her the earnings of his business to keep for him and received parts of them as he called for them. He contradicted plaintiff's statements in every material particular.

He totally denied any knowledge of the flyleaf accounts.

On the case thus made the court gave the following instructions for plaintiff:

"If the jurors believe and find from the evidence that the plaintiff loaned to the defendant the amounts of money itemized in her account sued on, and that the credits given to defendant as shown by said account are for payments made to plaintiff on account of defendant's indebtedness to her, and that the amounts and dates as stated in said account are correct, then your verdict should be for the plaintiff in such sum as you believe and find from the evidence that the defendant is indebted to plaintiff, not exceeding five hundred dollars, the amount sued for."

For defendant the following instructions were given:

"The court instructs the jury that the burden of proof is on the plaintiff, and before they can find a verdict for the plaintiff the jury must be satisfied by a preponderance of the evidence that the plaintiff did loan the defendant the amount of money claimed by plaintiff or some other amount, at the time mentioned in the account filed herein, or some other time, and unless the jury so find their verdict must be for the defendant.

"By mentioning the 'burden of proof' and the 'preponderance of evidence' the court means merely to briefly express the rule of law, which is that unless the evidence before you, in regard to facts necessary (under these instructions) to a verdict in favor of plaintiff, appears in your judgment more credible than the contrary evidence regarding said facts or more than the evidence of the facts mentioned in these instructions

as constituting a defense to plaintiff's said claim, then your verdict should be for the defendant.

"The court instructs the jury that if they find from the evidence that the plaintiff did advance and loan to the defendant the money or moneys as claimed by her and that no part of the same has been repaid, then their verdict must be for the plaintiff; but if the jury find from the evidence that the plaintiff has received partial payments on account of said loan, then the amount of such payments must be deducted from the amount claimed by plaintiff, by the jury, in rendering their verdict; but if the jury find from the evidence that the plaintiff has been wholly repaid then their verdict must be for the defendant.

"The court instructs the jury that if they find from the evidence that the plaintiff loaned to the defendant the amount claimed, or any other sum, at the time mentioned in the evidence, and that for a period of more than five years, before the institution of this suit in Feby. 25, 1889, no payment was made by the defendant or any one for him on account of said loan, or in recognition of a valid and existing claim, but that all of the payments made by the defendant to the plaintiff within said period of five years were made by defendant, as free and voluntary gifts, and not in payment or recognition of said loan, then and in that event the verdict must be for the defendant.

"The court instructs the jury that the plaintiff is not entitled to recover interest for any loans or advances made to defendant unless it appears from the evidence that a demand for payment of such loans or advances was made on the defendant by the plaintiff, and then only from the date of such demand."

The defendant asked and was refused a peremptory direction to the jury to find for defendant. He also requested of the court another instruction whose

terms will be mentioned in conjunction with our ruling thereon.

Defendant duly saved exceptions to the rulings brought under review.

The jury found for plaintiff as already stated, and this appeal followed.

1. The leading assignment of error is founded on the ruling admitting in evidence part of the writing called "Exhibit A," and allowing other parts of it to be used to refresh the memory of the witnesses.

The original writing had been fortuitously torn into fragments, before the controversy arose. Plaintiff and her daughter arranged the pieces and made a copy of the original account which literally followed it, except as to certain items of identical nature, each group of which was consolidated into one item instead of being copied as they stood before. So far as the items were shown to be copies of the original, the court allowed them to be introduced in evidence; but in so far as they were not strict copies, the paper was only allowed to be used to refresh the recollection of the witnesses who prepared it, each of whom verified it at the time.

The views of the learned circuit judge who tried the case were expressed as to these documents thus:

"I think, perhaps, I had better indicate the view I take of this testimony. I understand the plaintiff in this case kept an account, and the only account that she kept of the transactions between herself and the defendant in this case, on the flyleaf of a Bible. Of course, so far as the purposes of an account are concerned, that covered all the monetary transactions between them. That makes of that flyleaf as much an account-book as if she had kept it in some other book. Now, under the ruling in the Anchor Milling Company case, in the 108 Mo., upon the testimony of the plaintiff that those entries were made in that book contemporaneously with

the loans made, and that the entries of the credits were made contemporaneously with the payments made on account, the book itself would be evidence. Now that book—that leaf—is shown to have been destroyed, destroyed by the plaintiff herself. Of course, in connection with her testimony there is no implication that this destruction of this flyleaf was for a fraudulent purpose, but it was, we think, because of the fragmentary condition of what was left of the flyleaf after the child tore it, and supposing that there would be, or was, no controversy as to the matters recorded there. So that evidence of the contents of that leaf is in my opinion admissible; but where the paper that is now presented is shown not to be a copy of that paper it can not be used as a copy, but the paper presented may be used to refresh the memory of this witness as to the entries, and the statement may be made that these are copied from it to explain the entries on the original flyleaf. It may be used for that purpose, but not as a copy, because it does not purport to be a copy.

"I think the authorities exclude aggregates in this State. It is the book of original entry that is admissible, so that when you proceed with this witness, the witness may state what was copied, and as to the actual amounts, with a view of stating, if she has any recollection. She can say that she copied this, or copied that, or that there it is not a copy, but she can use it to refresh her memory and testify as to the contents of the lost book."

We do not regard that ruling as in any respect prejudicial to defendant's rights.

The fact that the copy was in the English language and the original in German is not material since the witnesses, who personally verified all the items as copies (or consolidated statements) of the original items, were acquainted with both of those languages.

It is accepted law in Missouri, under the decision

in Anchor Milling Co. v. Walsh, 108 Mo. 277, that original entries of book account are admissible testimony when authenticated as memoranda made contemporaneously with the transactions they record. The decision cited is founded on the statute law of Missouri. R. S. 1899, sec. 4653. It has been followed often. Robinson v. Smith, 111 Mo. 205; Walser v. Wear, 141 Mo. 443; Borgess Inv. Co. v. Vette, 142 Mo. 560; Mo. Elect. L. & P. Co. v. Carmody, 72 Mo. App. (St. L.) 534. It is certainly authority conclusive in this court. Const. Amendt. 1884, sec. 6.

It would seem from the description given by plaintiff of the manner of keeping the account in question, that her record of the transactions falls fairly within the meaning of the statute as a ''book of account.'' It was apparently her only account, or at least we have no information that she kept any other account on the flyleaves of the Bible in which these entries appeared. But a document containing an account, kept correctly in other respects, may not be discarded as testimony because only one account appears therein. Bell v. McLeran, 3 Vt. 185; Houghton v. Paine Estate, 29 Vt. 57.

Where the original entries would be admissible, secondary evidence thereof may be substituted when the proper foundation of fact appears to warrant such substitution. Here the destruction of the original paper, according to the testimony for plaintiff, was not voluntary but unavoidable. The ruling of the learned trial judge amounted to a finding that the conduct of plaintiff in reference to its destruction was characterized by good faith, and justified the admission of secondary evidence of the paper. Schroeder v. Michel, 98 Mo. 43.

The question of allowing or excluding secondary evidence of an admitted writing, or of one asserted to have existed, is one whose solution rests within the sound judicial discretion of the trial judge. Christy

v. Campbell, 45 Mo. 375; Henry v. Diviney, 101 Mo. 378; Wells v. Pressy, 105 Mo. 164; Anchor Milling Co. v. Walsh, 108 Mo. 277; Kleimann v. Goeselmann, 114 Mo. 437.

Or, to borrow a statement of the rule from another jurisdiction:

"To justify a reversal of the ruling of the trial judge excluding secondary evidence of the alleged contents of a written instrument it has been held that the proof of its loss or destruction should be so conclusive that it would be error of law not to hold it sufficient. Kearney v. Mayor, 92 N. Y. 617, 621. This must of necessity apply with equal force to the evidence relied upon to prove that the instrument alleged to have been lost or destroyed did at one time exist, for that which never existed can not be lost or destroyed." Berg v. Carroll, 40 N. Y. State Rep. 812. To the same effect is Mason v. Libbey, 90 N. Y. 683.

The voluntary destruction of an original manuscript by a party interested therein, does not of itself preclude him from introducing a copy or other secondary testimony of its contents. The act itself and its circumstances are to be fully considered. Skinner v. Henderson, 10 Mo. 205; Drosten v. Mueller, 103 Mo. 624. Where, as in the case at bar, the destruction of the paper has been brought about innocently, and before any controversy was brewing, participation in the act by the party afterwards offering secondary evidence of the paper will not preclude the admission of that evidence. Schroeder v. Michel, 98 Mo. 43.

The fact that (according to plaintiff's account of the transactions) some of the items of "Exhibit A." were shown to be for money lent and others for various articles supplied to defendant, did not render plaintiff's document incompetent. In some States it is held that items of money lent are not susceptible of this kind of proof. The reasons for that holding are per-

haps nowhere better given than in the lucid opinion of
Judge CHARLES ANDREWS in Smith v. Thayer, 131 N.
Y. 169.      And the general doctrine on that subject has
been well explained in 42 Cent. L. Jour. 302, and 9 Am.
and Eng. Ency. Law (2 Ed.), 931.   In Missouri, how-
ever, the meaning of our statute has been outlined by
our highest authority in such a way as points to the con-
clusion that items indicating loans of money are to be
admitted in evidence equally with other items, assum-
ing the account to be otherwise admissible.   The sec-
tion (R. S. 1889, sec. 4653) expounded in the Anchor
Milling Co. v. Walsh, 109 Mo. 277, was transplanted in
great part from the law of Vermont where it figured
as a part of the law of procedure in actions on book ac-
counts.   Gen. Stats., Vt. 1862, p. 342, sec. 8.   In that
State, items in such accounts of charges for money
loaned are treated as of equal admissibility with
items for merchandise sold.   Warden v. Johnson, 11
Vt. 455; Chellis v. Woods, 11 Vt. 466, both decided in
1839, followed in recent years (1885) by Plimpton v.
Gleason, 57 Vt. 604. The rulings in the first two Ver-
mont cases cited were well known before the enact-
ment of the Missouri section, which appeared here
first in the revision of 1865.   Gen. Stats. 1865, p. 586,
sec. 2.   As was said in the Walsh case, the Vermont
rulings are of aid in solving mooted points in the con-
struction of that statute, though they are not decisive.

There is another reason why "Exhibit A" should
not be excluded by reason of the items touching loans
of money.   It is a reason found in the law of our pro-
cedure.   No such point of objection was specified be-
low.   The objection was to the paper "as a whole" and
was placed on the ground of incompetency.   Some
parts of the document were obviously admissible for
reasons already discussed, for all the items do not
represent money loans.  If any parts of the document
were liable to exclusion for reasons not applicable to

all the items, those objections should have been assigned in the trial court. An objection to an entire document as a whole is futile, where any part of it is admissible. Schulenberg & B. Lumb. Co. v. Strimple, 33 Mo. App. (St. L.) 154; Grimm v. Dundee Co., 55 Mo. App. (St. L.) 457; Huke v. Railroad, 79 Mo. App. (St. L.) 685.

We consider that the learned trial judge was entirely right in his rulings on this branch of the case.

2. The circumstance that plaintiff and another witness on her behalf gave testimony of the facts which formed the subject of the original entries, independent of the latter, did not impair the admissibility of the evidence of those entries. The theory which has been assigned in the discussions in Missouri to support the admissibility of such entries (beyond the terms of the statute) is, that they are a part of the *res gestae* of the events which they describe. Anchor Milling Co. v. Walsh, 108 Mo. 277; Robinson v. Smith, 111 Mo. 205; Collins Drug Co. v. Graddy, 57 Mo. App. (St. L.) 41. Assuming as we do the correctness of that theory, the admission of the entries should not invalidate other competent testimony to the points of fact on which they bear, nor should such other testimony have any adverse effect on the admissibility of the entries. A party is entitled to prove any disputed fact by all sorts of competent testimony available to him. Johnson v. Dexter, 37 Vt. 641; Raynor v. Norton, 31 Mich. 210.

3. We regard as untenable the objection to those parts of "Exhibit A" which the plaintiff and her daughter, Mrs. Thomas, were allowed by the court to use to refresh their memory. Those parts of the paper were the items not copied literally from the original flyleaf account but which were formed of aggregates of like items in the original, as already explained. The plaintiff and her daughter, who testified in her behalf, took part in the preparation of the memoranda in ques-

tion and verified their coincidence with the original. The charges as transcribed in the copy related to transactions of which both witnesses asserted personal knowledge, and one of those witnesses (the plaintiff) declared that the original entries were made about the time the facts occurred which were recited in those entries; the other witness (Mrs. Thomas) indicated that the first entry as to the $500 was not made until about 1883. The receiving of that money, however, is admitted by defendant. The nature of the transaction is alone in question. Defendant insists that he received the money to invest for plaintiff. She contends that it was a loan. The fact of the receipt is not disputed; and if there was any error in allowing the use of the memorandum, as to that item, it was harmless. R. S. 1899, secs. 659, 576, 865. We hold that there was no reversible error in permitting the use of the memoranda. Third Nat. Bk. v. Owen, 101 Mo. 558; Abel v. Strimple, 31 Mo. App. (St. L.) 86; Insurance Co. v. Weide, 9 Wall. 677; 8 Ency. Pl. and Pr. 140.

4. Defendant assigns error on the refusal of the request for an instruction as follows:

"The court instructs the jury that if it appears from the evidence that the plaintiff never did in fact loan defendant the money or moneys claimed by plaintiff, but that the money given the defendant by plaintiff was given for purpose of investment in plaintiff's behalf in a certain saloon business, and that the defendant applied the said money or moneys accordingly; and if the jury further finds from the evidence that the defendant and plaintiff did subsequently settle and wind up the said saloon business and their business relations, then the verdict of the jury must be for the defendant."

We are by no means convinced that the first in-

struction given at defendant's instance does not fully
cover the essential points of the refused request, for
the former appears rather more favorable than the
latter to the defendant in that the jury were actually
told to find a verdict in his favor unless satisfied by a
preponderance of the evidence that plaintiff did loan
defendant some amount of money mentioned in the
account sued upon, whereas defendant's refused re-
quest required, as essential to a verdict for him, fur-
ther findings of facts touching the nature of the trans-
action between plaintiff and himself. It is a well-known
practice rule that error may not be successfully as-
signed on the refusal of an instruction whose substance
is otherwise given to the jury.    Williams v. Vanmeter,
8 Mo. 339; Britton v. St. Louis, 120 Mo. 437.

But, without distinctly placing our ruling upon
that ground, it seems to us clear that, in so far as
defendant's request goes beyond a call for a finding
that there was no loan (touching which it unquestion-
ably is covered by the first instruction for defendant),
it is deficient because not supported by evidence of
its supposed facts.    It ignores, for instance, the claim
of plaintiff on other items of her account besides those
concerning the alleged "saloon business."    It ignores
the duty which would rest on defendant to pay what
may have been ascertained to be due by him upon the
"settlement" mentioned.    There was no testimony of
any "settlement" or "wind-up" of their business rela-
tions generally.    Had there been a separate settlement
of the saloon account, it would not follow that the
"verdict of the jury must be for the defendant," as the
requested instruction declared.

A good instruction requires testimony to support
each call it contains for a finding of fact.    The testi-
mony may be direct, or it may be founded on fair and
reasonable inferences from other evidence, but where
it is wholly wanting in respect of some fact on which

the proposed instruction depends, the request for it should be refused. Waddingham v. Gamble, 4 Mo. 465; Bergman v. Railroad, 104 Mo. 77. The learned trial judge was right in this ruling.

5. Appellant's learned counsel, in their able and forcible brief, advance the proposition that the verdict is against the weight of evidence. This case is an action at law, tried before a jury, without objection by either party to the mode of trial. We consider that the assignment of error on the ground last mentioned is not open to our review under the established practice in Missouri. Garneau v. Herthel, 15 Mo. 191; Bray v. Kremp, 113 Mo. 552.

6. There was ample testimony which we need not recite to sustain the verdict. The decisive issues were of fact, and the jury accepted the plaintiff's version of the transaction.

We have weighed all the assignments of error and found none of them sufficient to change the result reached in the circuit court.

The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.