**STATE of Missouri, Respondent,**

v.

**Barry Leroy POWELL, Appellant.**

**No. 45136.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 25, 1983.

Motion for Rehearing/Transfer to
Supreme Court Denied March 17, 1983.

Murray Stone, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Judge.

Defendant appeals from his conviction by a jury of stealing over $150.00 in violation of § 570.030, RSMo.1978 (amended 1981). The court found him to be a persistent offender and sentenced him to a term of 15 years' imprisonment.

On appeal, defendant challenges the admissibility and sufficiency of the evidence showing the amount stolen, and he alleges the court erred in overruling his motion to suppress the witnesses' in-court identifications of him.

The state introduced evidence tending to show the following facts. On February 6, 1980, the defendant entered the Wamser-Ferman Sporting Goods Store in Manchester, Missouri. He approached a cashier and threw some change down on the counter and the floor. The cashier stooped down to pick up the change and left her cash register drawer open. Kim, a secretary at the store, closed the cash register drawer. Defendant then picked up a pair of shoe laces and took them to a second cashier, Michele. After Michele had rung up the purchase and opened the cash register drawer, defendant threw some change down on the counter and floor. When Michele stooped down to pick up the change, defendant grabbed some money from the register. Michele grabbed him by the lapels and demanded that he return the money. Defendant threw down part of the money, approximately $100.00, and ran out of the store. At trial, both Michele and Kim identified defendant as the man who had stolen the money. The defendant moved to exclude the in-court identifications on the ground they had been irreparably tainted by the impermissibly suggestive out-of-court identification procedures which had been suppressed. The court overruled defendant's motion.

The manager of the store provided the evidence of the amount of cash missing. He testified that, immediately after the theft, he closed Michele's cash register and calculated the amount of cash that was missing. In testifying, he relied on two exhibits that were offered and admitted into evidence. State's Exhibit 2 consists of the day's cash register tapes taken from the cash register immediately after the theft, a gift certificate, and a copy of that day's bank deposit slip for that register. State's Exhibit 1 consists of two adding machine

tapes which were prepared by the manager immediately after the theft and which show the amount of the cash missing. One of the figures on one of the tapes in Exhibit 1 represented the amount of cash in Michele's register at the start of the day. The manager testified that he had copied that figure from a journal prepared in the ordinary course of business. The other figures on the tapes were taken from Exhibit 2. Exhibit 1 was turned over to police officers. It was admitted over defendant's best evidence and hearsay objections.

◼ In his first point, defendant alleges the trial court erred in admitting Exhibit 1 and the testimony pertaining to it because it was hearsay not within the business record exception. In his second point, he alleges the trial court erred in admitting Exhibit 1 because it was not the best evidence of the amount allegedly contained in the victim's cash register at the start of the day. We note at the outset that defendant did not properly preserve his hearsay objection to Exhibit 1 because he did not raise it in his motion for new trial. Rule 29.11.

Defendant's best evidence objection to state's Exhibit 1 is directed to the figure taken from the journal and showing the amount of cash in the cash register at the beginning of the day. The other figures on the tapes in Exhibit 1 were taken from the deposit slip and cash register tape in state's Exhibit 2, and those documents were properly admitted as business records. Defendant contends Exhibit 1 was not admissible to show the amount in the register at the start of the day because the page from the journal on which that amount was originally noted was the best evidence.

◼ The best evidence rule does not preclude the introduction of secondary evidence; it merely embodies the law's preference for the best available evidence. *Schnucks Twenty-Five, Inc. v. Bettendorf,* 595 S.W.2d 279, 283 (Mo.App.1979). If the primary evidence is lost or destroyed, secondary evidence is admissible, and the unavailability of the primary evidence need not be proven "beyond the possibility of mistake." *Id.* The trial court has wide discre-

tion in determining the admissibility of secondary evidence. *State v. Stephens,* 556 S.W.2d 722, 724 (Mo.App.1977).

◼ In this case, the manager testified that he took the figure in question from a journal kept in the ordinary course of business. Each day, at the time the money is counted, the starting amount in each register is routinely recorded on a page in the looseleaf journal. These starting figures are recorded so that at the close of each day, the manager and the cashier can determine whether each register had a shortage or an excess of cash. Clearly, had the journal page for February 6, 1980, been available, it would have been admissible as a business record. However, the manager testified that he was not able to find the original page from the journal on which the starting amount for February 6, 1980, had been recorded and that, normally, the journal pages were disposed of at the end of each month. Further, he testified that he had copied the February 6, 1980, figure onto the adding machine tape. This was sufficient evidence of the reliability of the figure on the adding machine tape to support the court's admission of that tape as secondary evidence of the starting amount recorded in the journal. *See Stephan v. Metzger,* 95 Mo.App. 609, 69 S.W. 625 (Mo.App.1902). That the store manager or someone at the store destroyed the original record does not render secondary evidence inadmissible in view of the circumstances and lack of bad faith surrounding the destruction of the record. *L.S. v. L.M.S.,* 538 S.W.2d 753, 755 (Mo.App.1976). Clearly, the court did not err in overruling defendant's best evidence objection and admitting Exhibit 1 into evidence.

◼ Despite defendant's failure to properly preserve his hearsay objection to state's Exhibit 1, we will, nevertheless, consider that objection. As we stated above, the adding machine tapes were admissible as secondary evidence of the entry in the journal which was clearly a record kept in the ordinary course of business. Further, we believe the adding machine tapes were,

themselves, admissible under the business record exception to the hearsay rule. The store manager testified that he prepared these tapes in order to determine the amount of the shortage after the theft. He further testified that each day he calculated the shortages or excesses of cash in each register in much the same way he calculated the shortage after the theft. That the record, in this instance, was prepared to determine how much cash had been stolen does not remove it from the business record exception to the hearsay rule. The fact that a record was made in anticipation of litigation does not render that record inadmissible. The relevant inquiry is whether the record was made in the ordinary course of business. *Bohn v. James*, 573 S.W.2d 448, 450 (Mo.App.1978). We believe this one was.

■ In his third and, we believe, most significant point, defendant alleges the trial court erred in submitting the felony instruction because the evidence was not sufficient to show that the amount stolen was greater than $150.00. We disagree and we find the state fulfilled its burden of producing substantial evidence of every element of the crime, including the amount stolen. *State v. Smith*, 485 S.W.2d 461, 464 (Mo. App.1972).

The amount stolen was shown primarily through the testimony of the store manager which was, admittedly, not entirely clear. He testified that immediately after the theft he closed out the register and calculated that $196.51 in cash was missing from the register. He arrived at this figure by subtracting $466.58, the total amount of checks found in the register, from $1,355.32, the total amount of sales on that register for that day. The difference, $888.74, was the amount of cash that should have been received during the day. The record shows that, in essence, the manager then added $888.74 to $132.87, the amount in the register at the start of the day. The sum, $1,021.61, is the amount of cash that should have been in the register at the time of the theft. From $1,021.61, he subtracted $825.10, the amount of cash he actually found in the register after the theft, and thereby determined that $196.51 was missing after the theft. However, at another point in the trial, the manager testified that $188.00 was missing. He arrived at this figure by subtracting $700.00, the amount of cash he deposited in the bank after the theft, from $888.74, the amount of cash that should have been received that day. Further, the manager testified that, in order to determine how much cash should actually be in a register, he normally subtracts the total of voided sales from the cash receipts total. Exhibit 2 shows $75.82 in voided sales, but there is no indication in the record that the manager actually considered the $75.82 in determining the shortage after the theft. Finally, there was a copy of a $15.00 gift certificate included in Exhibit 2, but there was no testimony about whether that $15.00 should have been subtracted from the cash receipts total.

Even when we analyze the evidence in the manner most favorable to defendant, we find it sufficient to support the felony conviction. If we begin with a cash shortage of $188.00 and subtract the $75.82 in voided sales and the $15.00 gift certificate, we find the cash register was short $97.18 immediately after the theft. There was also evidence that the defendant had originally taken an additional $100.00, but had dropped it before he left the store. There was evidence the $100.00 was put back with the rest of the cash from the cash register. This $100.00 may be added to the other sum for the purposes of showing how much cash the defendant stole because a taking is complete at the moment the offender wrongfully assumes dominion over the property of another inconsistent with the rights of the owner. The dominion need last no longer than an instant. *State v. Van*, 543 S.W.2d 827, 831 (Mo.App.1976). The jury could have reasonably concluded that the defendant stole $197.18. Therefore, there was substantial evidence to support defendant's conviction of stealing over $150.00.

■ Finally, defendant contends the trial court erred in overruling his motion to suppress Kim's and Michele's in-court iden-

tifications of him. He alleges that the out-of-court identification procedures, which were suppressed, were so impermissibly suggestive that they irreparably tainted the in-court identifications. An in-court identification need not be excluded after a suggestive out-of-court identification where the witness had time to view the offender at the time of the crime and is able to describe the offender's appearance and clothing. Such circumstances give the witness an independent source and basis for the in-court identification. *State v. Davis,* 507 S.W.2d 32, 35 (Mo.App.1974). Here, one witness testified that she saw the offender for approximately one minute but did not know for how long a time she actually saw his face. The other testified she saw him for two or three minutes. One saw him from only a few feet away and the other was close enough to grab him. Both were able to describe the offender generally, and their descriptions for the most part matched defendant's appearance. While there were some discrepancies between the descriptions and defendant's appearance, these discrepancies affect only the weight of the identification testimony, not its admissibility. *See State v. Bivens,* 558 S.W.2d 296, 299 (Mo.App.1977). We find, in view of all the circumstances, the in-court identifications were based on observations made at the time of the crime, and the trial court did not err in overruling defendant's motion to suppress those identifications.

Judgment affirmed.

SIMON, P.J., and CRIST, J., concur.