58

STATE of Missouri, Respondent,

v.

Carlos HOWARD, Appellant.

No. 49270.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 13, 1985.

Motion for Rehearing and/or Transfer
Denied Oct. 3, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Debra Buie Arnold, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant was charged and convicted by a jury under a multiple count indictment. The court found him to be a persistent offender, and sentenced him as follows: Counts I and II, concurrent sentences of twenty years for first degree robbery; Count III, five years for armed criminal action, to run consecutive to Counts I and II; Counts IV, V, VI, VII, and VIII, concurrent sentences of twenty-five years for kidnapping, to run concurrently with the sentences imposed in Counts I through VIII; Count IX, five years for second degree assault, to run concurrently with the sentences imposed in Counts I through VIII; Count X, five years for armed criminal action, to run consecutive to the sentences imposed under Counts I and II, and concurrently with the sentences imposed in Counts III through IX; Count XI, ten years for first degree tampering, to run concurrently with the sentences imposed in Counts I through X. Defendant appeals. We affirm.

At approximately noon on December 2, 1983, Ruthie Butler was parked with her three grandchildren, aged eight years, two years, and a few months old, in Butler's automobile outside a business known as the Currency Exchange while her daughter cashed a check. Butler heard someone tell her to "open the door, bitch," turned, and saw defendant pointing a revolver at her. She opened the door and defendant entered the auto. Melvin Ryan, a friend of Butler's also waiting in the parking lot, saw this happen and approached to investigate. When defendant saw Ryan, defendant stepped out of the car, struck Ryan in the head with the gun, and ordered him to "get in the car, motherf____." At this point, Butler got out of the car and shouted for help. Defendant told her to get in and

shut her mouth, which she did. Defendant then reentered the vehicle and began driving away. Butler jumped from the moving auto and went for help, but defendant continued driving with Ryan and the grandchildren. Defendant robbed Ryan of his money and watch and then stopped the car, ordered everyone out, and drove away. The police arrested defendant the next morning after finding him driving the stolen vehicle.

Butler and Ryan identified defendant as their assailant in both a pre-trial line-up and during the trial. They viewed the line-up, which consisted of defendant and three other men, less than twenty-four hours after the crime. Defendant and two others in the line-up wore caps, but only defendant wore a shower cap, which the two victims had described their assailant as wearing. Both victims viewed the line-up separately and identified defendant. Butler, after identifying defendant, stated that he should have a missing tooth. Defendant was instructed to show his teeth, which revealed a gap from a missing tooth. After the line-up, defendant spontaneously stated he was sorry he had done it. At trial Butler and Ryan positively identified defendant.

■ Defendant contends on appeal that the pre-trial line-up was unnecessarily suggestive because defendant was the only one in the line-up wearing a shower cap such as the assailant was described as wearing, and because defendant was the only one required to show his teeth to the victims. Defendant claims that this allegedly improper line-up undermined the reliability of the victims' in-court identification so that insufficient evidence supported the identification of defendant as the man who committed the offenses, and the case should therefore not have been submitted to the jury.

The law governing the admissibility of pre-trial and in-court identifications is well settled. A two-step analysis applies. The court first determines whether police procedures, such as the composition of a line-up, were impermissibly suggestive. If so, then the court determines if those procedures were so suggestive as to create a very substantial likelihood of an irreparable misidentification at trial. *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979), *appeal dismissed* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

The line-up here was not impermissibly suggestive. The fact that defendant was the only man required to exhibit his teeth does not make the line-up suggestive. The evidence shows that both victims first identified defendant during the line-up, and only afterward did Butler ask to see defendant's teeth. This additional indicia of identification only supplemented the identifications already made. Nor does the fact that defendant wore the only shower cap in the line-up and the assailant was described as wearing such a cap render the line-up impermissibly suggestive. The fact that a suspect wears the same clothes in a line-up as those ascribed to the assailant has not prevented courts from finding the pre-trial identification sufficiently reliable. *See* *State v. Carter*, 572 S.W.2d 430 (Mo. banc 1978); *State v. Terry*, 582 S.W.2d 337 (Mo. App.1979). Features such as clothing are of only secondary importance to the factors of size, color, and sex in identifying suspects, and may create suggestiveness only when they constitute the sole focal point of identification. *State v. Sanders*, 621 S.W.2d 386, 388–89 (Mo.App.1981). As both victims testified that they would have identified defendant even without the shower cap, and their positive identifications were supplemented by recognition of the distinctive feature of the missing tooth, the pre-trial identifications were not impermissibly suggestive.

■ Having thus concluded the first step of analysis, our inquiry could end here. Nonetheless, we consider the second step of the analysis and find the in-court identifications admissible regardless of any alleged suggestiveness in the pre-trial line-up identifications.

Reliability is the key to determining the admissibility of in-court identifications. That reliability is assessed under the totali-

ty of the circumstances in accordance with five principal factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Higgins*, 592 S.W.2d at 160.

■ Considered in light of the facts of this case, these factors indicate that the in-court identifications of defendant are reliable. Butler and Ryan were in the car with defendant for a considerable length of time, and each was closer than the width of a car seat from defendant, so both victims had ample opportunity to view him. The attention of the victims was fixed on the perpetrator while he assaulted, robbed, and kidnapped them. The victims described defendant to the police, and although they both were in an excited state, and Butler's description was initially unclear as to the color of defendant's cap and as to whether she was describing one or two persons, much of the victims' descriptions were accurate. In any event, discrepancies in identification testimony affect only its credibility and not its admissibility. *State v. Powell*, 648 S.W.2d 573, 577 (Mo.App.1983). Finally, the record shows no ambivalence in either the pre-trial or in-court identifications of defendant, and the line-up took place less than twenty-four hours after the crimes, while the events were still fresh in the victims' memories.

Our consideration of the evidence and the foregoing factors convinces us that the pre-trial identification of defendant was not suggestive, and the in-court identification was reliable. The state presented a strong case, and the trial court properly denied the motion for acquittal.

Affirmed.

DOWD, P.J., and CRANDALL, J., concur.