C. C. WILSON, Plaintiff-Respondent,

v.

SUPREME LIBERTY LIFE INSURANCE COMPANY, a Corporation, Defendant-Appellant.

No. 30650.

St. Louis Court of Appeals. Missouri.

Feb. 21, 1961.

Motion to Modify Opinion or Transfer to Supreme Court Denied March 24, 1961.

S. R. Redmond, St. Louis, for defendant-appellant.

Frank S. Bledsoe, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action for money had and received, which originated in the Magistrate Court of the City of St. Louis. From an adverse judgment defendant appealed to the Circuit Court, where a verdict and judgment was rendered against it in the sum of $931.19, together with interest thereon of $528, or a total of $1,459.19, from which it has again appealed.

The defendant is a foreign life insurance company whose principal office is in Chicago, and is licensed to and does operate in this state. Plaintiff is a former employee, who served as its agent in one of its debits, from about January 9, 1931 to June 30, 1956, except for the period from November 1948 until June 1950, during which time he was manager of the company's St. Louis office. It appears that because defendant's agents collected money

for it in their debits, but could not obtain fidelity bonds, it was the established practice to deduct sums from time to time, out of the compensation due an agent, to insure the faithful performance of his duties. The accumulated amount thus retained was called the agent's "bond reserve." Following plaintiff's retirement from the company, on June 30, 1956, a dispute arose as to the amount in plaintiff's bond reserve. He maintained that the sum due him was $931.19, and that under the terms of his employment he was entitled to interest thereon at the rate of 6%. Defendant offered to pay plaintiff $451.19, which it contended was all that was due him, and denied that he was entitled to any interest.

Viewing the evidence in the light most favorable to the plaintiff, as we must, it appears from the evidence that Boyd Holmes, who was the manager of defendant's St. Louis office in 1931, sent for plaintiff and offered plaintiff employment as an agent in one of the defendant's debits. Holmes informed plaintiff that because plaintiff would be handling the company's money, and couldn't be bonded, that the company would take a sum out of plaintiff's earnings each week, to be retained as a bond reserve. Plaintiff inquired of Holmes how long such a practice would be continued, and was told by Holmes that it would be followed as long as plaintiff worked for the company. Plaintiff then pointed out that a man might work for defendant as long as 15 or 20 years, and asked if the company paid interest on the money. Holmes replied that it did so, at the rate of 6%. Thereupon plaintiff accepted the tendered employment and began working for the company about January 9, 1931.

Defendant objected to the plaintiff's testimony concerning Holmes' statement that the defendant would pay interest, on the grounds that Holmes had no authority to make such a promise. The admission of such evidence forms the basis of defendant's first assignment of error. None of the cases cited by defendant in

support of its argument is applicable, for the reason that they deal with the authority of an agent (and one with that of a district manager) to bind his principal on a policy of insurance. What we are here concerned with is a contract of employment. Plaintiff's evidence showed that Holmes, as manager, was in charge of the operation of its St. Louis office; that he did, in fact, employ plaintiff as a debit agent, for the purpose of carrying on the business of defendant; that from the manager's weekly reports sent to it, defendant was aware of such employment; and that plaintiff worked for defendant for over 27 years. Defendant's argument seems to be that to sustain his burden of proof plaintiff was required to show that Holmes had *express* authority from defendant to promise to pay plaintiff interest on his bond reserve. What it overlooks is that where an agent has the power to employ others in the furtherance of the principal's business, it is within the apparent scope of the agent's authority to agree upon reasonable terms of employment, and the principal will be bound thereby. Halliwell v. Oriental Cement & Plaster Co., 170 Mo.App. 582, 157 S.W. 89; Cross v. Atchison, T. & S. F. Ry. Co., 71 Mo.App. 585; 2 C.J.S. Agency § 105. The evidence was therefore admissible to show the terms of plaintiff's employment.

It appears from the evidence of both parties that throughout the course of plaintiff's employment the manager of defendant's office was required to submit to defendant each week, in duplicate, a report, termed the manager's summary, showing, among other information, the amount of compensation earned by each debit agent during that week and the cumulative amount of each agent's bond reserve retained by defendant during all of the agent's prior service. One copy was retained in defendant's Chicago office and the other was returned to the St. Louis office. Prior to the trial plaintiff served defendant with a motion to produce such summaries for the period covering plaintiff's employment. De-

fendant brought in those from 1952 to 1956, and offered evidence that it did not have the summaries for the prior years because the copies kept in Chicago had been destroyed in a fire, and the duplicates in St. Louis had been lost when that office was moved from one location to another.

██ During plaintiff's appearance on the stand, and over defendant's objection, plaintiff was permitted to testify to a conversation he had in the Spring of 1944 with the clerk of the St. Louis office who prepared the summaries. The gist of his testimony was that she told him that his accumulated bond reserve, amounting to $480 at that time, had been omitted from that week's summary. Plaintiff also stated that when the amount of his bond reserve again appeared on a subsequent summary a new accumulation, without the $480, was begun anew by defendant. Defendant complains that what the clerk told plaintiff was hearsay, and that the admission of his testimony regarding the same was prejudicial error. Plaintiff does not contend that he saw the records, or that at any point in his testimony he was testifying from his own recollection of what they showed. His position as set forth in his brief is that because the records were not in existence: " * * * Secondary evidence was the only evidence available to the plaintiff * * * She was the agent of the defendant and her statement about the 1944 managers summary was the best evidence available." It may be conceded that under the circumstances plaintiff was entitled to use secondary evidence to establish the contents of the missing summaries. However, our courts have long recognized the rule of degrees of secondary evidence, and have required that the best of such evidence must be used. Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001; Bank of Aurora v. Linzee, 166 Mo. 496, 65 S.W. 735; Zimmerman v. T. C. Bottom Produce Co., Mo.App., 192 S.W. 1938. Since all copies of the summaries had been destroyed, the *testimony* of their contents by the clerk who prepared them

or of someone else who was familiar with them, was the best evidence. Scrivner v. American Car & Foundry Co., supra. The testimony of plaintiff as to the clerk's statements of their contents was clearly hearsay, and was no more admissible as secondary evidence than it was as primary evidence. Scrivner v. American Car & Foundry Co., supra; Cazier v. Hinchey, 143 Mo. 203, 44 S.W. 1052. We have examined the two cases cited by plaintiff, Randazzo Macaroni Mfg. Co. v. Minneapolis & St. L. R. Co., Mo.App., 251 S.W. 466 and Bosse v. Weik, 144 Mo.App. 468, 129 S.W. 417, and find them inapplicable. Neither of them concerns a situation where, as here, the contents of a destroyed record was attempted to be established by hearsay evidence.

■■■ Defendant's third assignment of error is that the court erred in giving instruction No. 1 on behalf of the plaintiff. According to our reckoning, nine separate complaints are leveled at the instruction. We will deal with those raised, but no others, in the order adopted by defendant. The first is that the instruction " * * * is improper, erroneous and misleading." In the absence of further clarification such a charge raises nothing for review. The second is that the instruction " * * * erroneously instructs the jury to find if there was a contract made * * *." The instruction does indeed do that, and more; it required the jury to determine whether by its contract the defendant had agreed to pay the plaintiff interest on his bond reserve. Defendant did not deny that a contract of employment had been made; what it disputed was the term regarding interest. And since that was a controverted issue of fact it was not only proper, but necessary, for plaintiff to submit that issue to the jury for its determination. The third complaint is that the instruction directs the jury " * * * to find for respondent without requiring a finding that the reserve had not been paid respondent." Defendant conceded that the reserve had not been paid plaintiff—what it disputed

was the amount due. By defendant's instruction the jury was directed to return a verdict for plaintiff if it found that only $451.19 was due him. It is not error to omit a conceded fact from an instruction. Wyckoff v. Davis, Mo., 297 S.W.2d 490; Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W.2d 810.

■■■ The fourth attack made on instruction No. 1 is that "It confused the jury by listing many elements conjointly * * * without using the words 'if you so find' a single time." A mere reading of the instruction refutes the charge; the instruction begins with the words "if you find" and they are repeated twice more at the appropriate and necessary places in the instruction. The fifth criticism made is that the instruction was also confusing in " * * * failing to tell the jury when the interest was to start." To the contrary, the jury was required to find that the contract of employment provided that a weekly sum was to be deducted, and that interest was to be paid on each sum so deducted, at the rate of 6%. The sixth charge is that "There was no showing that the appellant's district manager had authority to obligate appellant to pay interest and in the absence of showing such authority by respondent, it was error to present the matter to the jury." What we have heretofore said as to the evidence of the apparent scope of the manager's authority disposes of this contention. Defendant's seventh complaint is that the instruction " * * * assumed material controverted facts by telling the jury if it found appellant deducted 'weekly sums' when that was in controversy as appellant showed nothing was deducted many weeks (T. 68–71) and respondent testified something was deducted every week (T. 16)." Defendant does not point out what controverted facts were assumed. What it actually contends, as we understand its brief, is that plaintiff's instruction "assumed" controverted facts because only the evidence favorable to plaintiff was hypothesized, and defendant's conflicting evidence was not incorporated in the in-

struction. Of course, plaintiff was entitled to submit an instruction based only upon evidence which favored his theory of the case, even though plaintiff's evidence was controverted by that of defendants. Highfill v. Brown, Mo., 340 S.W.2d 656. The eighth charge is that "The instruction was erroneous and prejudicial." Again, such a general complaint will not be considered. Defendant's ninth and final attack on the instruction is that "The instruction went beyond the evidence by instructing on interest." Such an assertion completely disregards and is contrary to plaintiff's testimony that at the time the manager of defendant's St. Louis office employed him the manager promised that interest would be paid on the weekly sums deducted from plaintiff's compensation. It might be added that while the instruction is not vulnerable to the specific attacks made upon it by defendant, we would not recommend its use as a model.

Defendant's fourth and fifth principal assignments of error both concern plaintiff's instruction No. 2, by which plaintiff submitted the issue as to the amount he claimed was due him. Since the case must be retried, at least as to that issue, and plaintiff will have an opportunity to redraft the instruction to meet the criticisms made, we need not pass upon them.

The sixth and final assignment of error is that certain remarks of counsel for plaintiff during the closing argument were prejudicial and inflammatory. The record shows that defendant objected to the argument and requested the court to instruct the jury to disregard it, and that the court did so. No motion for a mistrial was made or denied, and no further reference to the subject was made by plaintiff. While it is true that a " * * * transgression can be so grave as to be reviewable even though the point is not preserved for review" as stated in Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, 410, cited by defendant, the facts in that case clearly differentiate it from the instant case.

As previously stated, the primary issues in the case were twofold: (1) whether the defendant entered into a valid contract with plaintiff by which it agreed to pay him interest on the weekly sums deducted to form his bond reserve; and (2), the amount which had been deducted and was due plaintiff, together with interest thereon. The first issue was submitted to the jury and determined in favor of plaintiff. As we have ruled, the only evidence introduced in support of the second was inadmissible. Since the issues were not interdependent, it is the recommendation of the Commissioner that the judgment be reversed and the case remanded for a new trial on the question of the amount due plaintiff under the contract.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the case remanded for a new trial on amount due plaintiff.

ANDERSON, P. J., WOLFE, J., and SAM C. BLAIR, Special Judge, concur.