Ernest PADGETT, Plaintiff-Respondent,

v.

Barnett BREZNER, Defendant-Appellant.

No. 8035.

Springfield Court of Appeals.

Missouri.

Aug. 11, 1962.

Donnelly & Donnelly, David Donnelly, Robert T. Donnelly, and Wendell L. Evans, Jr., Lebanon, for defendant-appellant.

Orville C. Winchell, Lebanon, for plaintiff-respondent.

RUARK, Presiding Judge.

This is an appeal from a judgment for plaintiff on a suit wherein the plaintiff claimed a "bonus" under a construction employment contract. A rather lengthy statement of the facts is necessary to a full understanding of the issues involved.

The petition alleged that plaintiff is a resident of Lebanon, Missouri, and defendant is a nonresident. Plaintiff and defendant entered into a contract whereby plaintiff was to perform "certain services" for the defendant, who was a general contractor, at Fort Leonard Wood, Missouri. *After* the parties entered into contract, plaintiff was given authority to go over certain items of cost in a construction job and plaintiff was to receive a 10% bonus on any items which were reduced in cost through efficiency and handling efforts on his part. There was "one item" for road construction at a cost of $152,000 which was reduced to $105,000 at the special instance and efforts of the plaintiff, thereby effecting a savings to defendant in the sum of $47,000.

"That defendant was to receive 10% of this amount, thus a net savings of $42,300.00 was saved of said bid and thereafter plaintiff was to receive 10% of this net amount" of $42,230. The sum of $1,600 was paid on the 9th day of November, 1960, and demand was made on defendant for the balance of $2,630, but he refused to pay. Plaintiff received a letter from defendant discharging him from all further services and his employment was terminated.

This petition was filed November 28, 1960. Accompanying it was an affidavit for attachment.

The amended answer is in effect a general denial. Concurrently defendant filed his counterclaim wherein he alleged that in October 1959 he employed plaintiff as his project manager on a contract for construction of off-site facilities pertaining to a housing project at Fort Wood and that he discharged plaintiff on November 9, 1960. Plaintiff's duties as project manager were to have control of the project, to keep accurate account of the business and affairs of the defendant, and otherwise to protect his interest on such job. During that employment plaintiff converted to his own use sums of money of the defendant and fraudulently caused the books and accounts to be kept in a fraudulent manner for the purpose of concealing his acts. The prayer was for $2,428.95. Plaintiff's reply denies all facts except his employment as project manager and his discharge on November 9, 1960. Trial was held in Laclede County on May 26, 1961.

Defendant Brezner is a general contractor with offices at Alexandria, Louisiana. He had bid in and been awarded a contract for work on an off-site construction project to be completed at Fort Leonard Wood in Missouri. In July 1959 plaintiff met the defendant in Alexandria, and the result of this meeting was that defendant employed plaintiff as project manager on the Fort Wood project. His salary was to be $150 per week, plus $50 per week living expense, plus $50 per month allowance for use of personal car, plus fuel for his car when used for business purposes. Plaintiff says he told Brezner he was not interested in a straight salary deal and asked Brezner if there would be a chance of making a commission on the job and "his answer to this question was that he had bid the job very low and that he subcontracted [some parts?] of the work * * * but there were other items that he had not subcontracted which included the roads, streets, sidewalks, clearing, and grubbing, and that had not been subcontracted and that if I came to Fort Wood for him *and could save some money on these he would give me a cost breakdown of how he had bid the job and if I could save some money on this job that he would pay a commission* for me to accept." He said that on August 3 he drove up and told Brezner he was going to take the job.

"Q. Now, from your understanding when is a commission like that payable —when were you to receive that money?

"A. Oh, the agreement was that I would receive the money when the job was completed."

Brezner gave him the plans and specifications on the job and said, "Take these home and study them and look them over," and told him (plaintiff) he would get a work order to report to Fort Wood in a few days. He went on the payroll September 17, 1959, and on September 22 went to work at Fort Wood as *project manager*. That was the agreement which is the basis of the plaintiff's case.

The defendant denies there was any agreement for bonus or commission. He says it was never discussed and that he never heard of it until the lawsuit was filed. The verdict, however, having been for plaintiff on his claim, we must assume that the conversation above-mentioned took place.

After plaintiff got on the job as project manager an office was set up near the site and the records of the construction project

were there. An account was opened in the Waynesville Bank, and plaintiff as project manager had authority to and did check on such account for payroll and project expense, including his own salary and allowances.

Then plaintiff began looking for a subcontractor. One Mace heard about it and got in contact with plaintiff. Plaintiff took Mace over the project. Mace looked at the specifications, and the upshot of this was that Mace made a bid of $109,000 on a subcontract for performing three items, viz., grubbing, or site clearance, grading, and surfacing of certain roads. Plaintiff did not make the deal with Mace. He called Brezner, and Brezner came up to Fort Wood. Plaintiff introduced Mace to Brezner, and Brezner and Mace had a conversation wherein Mace agreed to reduce his bid for performing the three items to $105,000, and the subcontract was let to him for those particular items. It is the "savings" on the subcontract for these three items for which plaintiff claims a bonus or commission, because, as we understand his testimony, he had brought Mace and Brezner together.

Roscoe Mace, called as a witness for plaintiff, verified the fact that he was a contractor. In 1959 he was doing construction work at the camp for another contractor. He had a discussion with plaintiff, went over the plans, looked at the job site, and prepared bids for two parts of the construction work (one was not accepted). He went to the Engineering Corps and got some estimations of quantity and then in his own office prepared his bid of $109,000. There was no specific price discussed with plaintiff. No one had any influence on him in fixing the amount of his bid. He based it on blueprints, exhibits, and quantities. There were other bidders for the project and bidding was on a competitive basis. No one told him what to bid. After he met Brezner he reduced his bid to $105,000 and entered into a contract with Brezner. He identified his final bid and contract thereon but stated, "This was the final contract agreement, but *this here amount is not the right amount of the contract at present because there was some deletion."* The figure of $105,000 was the agreed figure at the start. The Army engineers made some changes *and deleted a portion of the improvement and this changed the dollar volume, which was taken off his contract and off Brezner's.*

Somewhere the job got behind schedule, and it was still behind schedule at the time plaintiff was discharged. Plaintiff agrees to that. He said, "Well, we had a snow here that stayed on the ground for some thirty days that we didn't turn a wheel on the project, and the government allowed us an addition of time for that, and there were other things that just caused the project to lag, some of the construction."

At the trial plaintiff's witness Mace was asked, " * * * you have initiated the job and you *contemplate finishing the job,* is that correct?" And he answered, "That's right." Defendant Brezner stated that plaintiff commenced the project and that it was *never up to schedule.* His contract with the government carried a delay penalty of $200 per day. The job was far behind, was not yet, at trial time, completed, and the $200 per day penalty was running. Some of the delay was due to bad weather and some of it wasn't. In October 1960 the project was 40 or 50 or 60 days behind. For awhile, when one Stewart worked in the Fort Wood office, he, Brezner, would get a list of checks which plaintiff had written. The list of these was kept and forwarded by Stewart. Padgett fired Stewart in March, and after that Brezner got no more lists.

In late October Brezner sent his agent, John Skodack, to Fort Wood to look over things. Skodack spent some twelve or thirteen days making a survey of the situation, but Padgett continued in charge of the project. Finally on November 7, 1960, Brezner wrote Padgett a letter as follows:

"Since the job is about wound up, I have decided to leave John Skodack at

the camp until the final acceptance. Your own work will finish up at the end of this week. Please arrange to turn all office records over to John at that time.

"As of the moment we do not have another job to put you on, as you are undoubtedly aware. When you stop at the office on your way home we will discuss matters further."

Plaintiff left on November 9 and departed for Lebanon, Missouri, and thereafter Skodack took over as project manager.

When plaintiff left employment he took with him certain records of the company. Included in these were a ledger sheet which plaintiff said was a list of deposits and checks written, also a list of "all the checks that I cashed." Skodack testified that when he took over there was no checkbook. Padgett had these in his possession. Skodack drove to Lebanon and Padgett gave him the check stub book and two boxes of fittings.[1]

Padgett agreed that he did not stop to see the defendant Brezner, nor did he personally make any demand upon Brezner. Instead he went to Lebanon. There he consulted an attorney. On November 9, 1960, he wrote himself a check on the Brezner account for $1,600, which he claims as "advance" on the amount of commission due him. He made no stub in the checkbook which would show the issuance of this check.

He also wrote a check for $100 payable to "cash," which he says was for expenses to go back home (to Lebanon?).

The record shows that he agreed to or admitted the writing of other checks as follows:

A check for $150, date November 1, 1960, payable to "cash," which he *said* was cash for clerical help, typing weekly time sheets from May 1 to November 1, 1960.

"Q. Did that $150 go to you?

"A. Yes, sir.

"Q. And did you pay for typing and clerical expenses with that hundred dollars?

"A. I haven't paid for that yet. I still owe the man."

A check for $200, date February 15, 1960, payable to plaintiff, which he said was a personal loan he made to a friend, a workman. He *says* that he informed Brezner of this check. The money had been repaid to him but he had not repaid Brezner.

A check for $369, dated August 9, 1960, payable to a motor company, which he says was down-payment on a new automobile he purchased. He says he repaid the Brezner account for this, and that he *thought* he informed Brezner of this transaction.

Plaintiff agreed that, of unauthorized checks he had written, $450 had not been refunded to Brezner. He gave as his reason for taking and retaining financial records of the project after his discharge, "I was laid off without any reason. I kept the records so I would have them in case that—if I needed them."

The amount of Padgett's claim is based on the difference in the contemplated cost which Brezner had set up as an estimate on the three items (subcontracted by Mace) and the actual or concluding cost of these portions of the project, the alpha and the omega. He places the beginning figure at $152,000. To arrive at that figure he says when he took the job Brezner gave him the original plans and specifications and his (Brezner's) cost breakdown of all the items, in which had been figured or estimated what the cost of each item would be. He said this breakdown was typewritten on "a piece of paper." Asked where that cost breakdown paper was, he said, "It was left right in my office at Fort Leonard Wood." Testifying from recollection as to the contents of this breakdown of cost estimate, he said

---

1. Padgett produced at the trial the check ledger records above-mentioned.

the cost of clearing and grubbing was $4,000. Grading was $68,000. "On the roads were—now I could be off a thousand dollars one way or other because I didn't have the original copy Mr. Brezner gave me, but to the best of my knowledge the roads was $80,000." The total of these items was $152,000, his alpha. It is this testimony which is the basis for appellant's first assignment of error. The contention is that such testimony (as to the content of the cost breakdown paper) was in violation of the best evidence rule.

██ The respondent contends that the defendant did not object to such testimony, and our first problem, therefore, is to determine whether the defendant made the objection. At the outset plaintiff had a paper marked as an exhibit which does not appear in evidence but which we gather from colloquy was "a revised document over something which had previously been gone over between you and Mr. Mace and Mr. Brezner." "Yes, *due to deletions made by the engineers on the contract.*" He was then asked if he could tell "from your knowledge of going over these plans and specifications what figures was allowed under the original items and what the amounts of those figures were and what they were for." Objection was made and sustained. Thereupon counsel for plaintiff stated that "the question doesn't go to this document at all * * *. I asked him if he knew from his own recollection in going over the original plans and specifications, if he knew what the figures were and what the allowances were for each of those items."

"Mr. Donnelly: Well, then, I will object for the reason the record is the best evidence.

"The Court: Are you talking about some matters that were brought to the attention of the defendant?

"Mr. Winchell: Yes, they were brought—I said the question was between the plaintiff, the defendant, and the witness himself *when they sat down and they talked about them,* and if he knew what the figures were and what they were for."

The court permitted the witness to answer and he testified as to the beginning figures which were contained in the paper. Later on the examination disclosed that the record concerning the items of costs was actually on one sheet of paper which was not really a part of the original plans and specifications, but was defendant's alleged breakdown of cost in calculating his bid. But the defendant made his objection on the basis of the best evidence rule at the first opportunity. It should also be borne in mind that, in his representations to the court after the objection was made, plaintiff's counsel in referring to these figures stated that the defendant and the witness sat down and *talked about the figures.* [This may have been the reason for the court's overruling the objection (on the theory that the actual figures were a part of the whole conversation which made up the oral contract).] Nowhere in the plaintiff's testimony does it appear that the figures so related by him were actually mentioned in that conversation, nor does he claim that the figure of $152,000 or the lesser figures which made that total were mentioned in the discussion which made up the oral contract. The whole of plaintiff's alpha is based upon his testimony as to recollection of what went into a breakdown of estimated costs, rather than from any actual talk between the parties. Defendant testified that he never heard of the figure $152,000 until the lawsuit. Plaintiff's witness Mace never heard it mentioned. Defendant testified that he made his bid for the job to the Kansas City office of the Army Engineers. He definitely had a figure somewhere as to what the items were going to cost him and he had records on what he submitted to Kansas City; but he did not bring them to the trial because he did not know they would be necessary. The record does not disclose any subpoena, notice, or call upon the defendant to produce the cost breakdown which plaintiff states he left in the office at Fort Wood. Defend-

ant produced, on his own volition, an exhibit which is referred to as a progress report, purported to have been submitted and signed by plaintiff Padgett on November 30, 1959, and approved by the contracting office (presumably the Corps of Engineers). This report showed fourteen items of construction. Opposite each construction item was a figure in a column entitled "value." (Defendant testified that these values included the cost of construction plus, allocated to each item, a proportionate part of the general contractor's cost, such as bond, insurance, project manager's salary, overhead, et cetera. As to this plaintiff did not testify.) These items listed showed "site clearance" $4,000, which accords with plaintiff's oral testimony; "grading" $58,000, $10,000 less than plaintiff had testified; and "roads" $85,000, $5,000 more than plaintiff had testified; (total of the three items, $147,000). The plaintiff did not resume the stand and testify as to this report. Nor did he testify in respect to whether general costs were apportioned against the various items.

We are of the opinion that defendant's claim of error in respect to permitting the plaintiff to testify as to the contents of the written instrument must be sustained.

It is true, as respondent contends, that the defendant did not object to oral testimony as to the contents of the paper which finally came to be referred to as the cost breakdown. But he *did,* at his first opportunity, object to oral testimony concerning the contents of the instrument which plaintiff then represented as the "original plans and specifications" (and had the instrument been such, defendant's objection would have been

good). The fact, as it *later* developed, after the figures were in and before the jury, that the contents so testified to were those of another paper (the cost breakdown), even though the misrepresentation was unintentional, should not deprive the defendant of his objection. He *did* object in the form the evidence was offered. Nor should the plaintiff be permitted to, unintentionally of course, mislead the court by creating the impression that the figures so testified to were actually figures which were verbally discussed and thus became a part of the conversation which comprised the alleged oral contract. True, the defendant could, and should, have moved to strike the testimony, after it became apparent that it had ridden into the evidence on a false vehicle. But the evidence was already before the jury and the fact that he did not do so should not deprive him of the benefit of his objection.

It is an elementary principle of law that the best evidence of which the case in its nature is susceptible and which is within the power of the party to produce, or is capable of being produced, must always be produced in proof of every disputed fact. Hence, the best proof of the contents of a writing is the writing itself.[2] And "the mere fact that one's adversary is in possession of a writing containing facts relevant to the issues in the case does not warrant the introduction of secondary evidence of its contents. To lay the foundation for the introduction of secondary evidence, the proponent must show that he has done all in his power to secure the best evidence by giving his adversary notice to produce the desired writings or supplying an adequate reason excusing the giving of such notice."[3] There is nothing in the record to

2. Baker v. Atkins, Mo.App., 258 S.W.2d 16, 20, 21; Housden v. Berns, 241 Mo. App. 1163, 273 S.W.2d 794, 799; Miller v. John Hancock Mut. Life Ins. Co., Mo. App., 155 S.W.2d 324, 327; Wilson v. Supreme Liberty Life Insurance Company, Mo.App., 343 S.W.2d 649, 651; Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250, 254; Siegel v. Ellis, Mo., 288 S.W.2d 932, 940; Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S.W.2d 687, 689; Mickel v. Thompson, 348 Mo. 991, 156 S.W.2d 721, 724(2).

3. 20 Am.Jur., Evidence, § 442, p. 395; 76 A.L.R.2d 1356, 1366; Miller v. John Hancock Mut. Life Ins. Co., Mo.App., 155 S.W.2d 324, 328; Metropolitan Discount Co. v. Wasson, Mo.App. 235 S.W.

show that any notice to produce, demand, or subpoena was issued for the paper which contained the cost breakdown. The evidence in this case illustrates the soundness of the best evidence rule. Plaintiff testified to recollection of certain figures. "I could be off a thousand dollars one way or other." The later figures apparently issued under his name (which defendant says also included apportioned over-all cost) show him to be at variance in the amount of $10,000 in one item and $5,000 in another.

■■■ Respondent does not seriously dispute the application of the best evidence rule, but he contends that such testimony was competent as a part of the *res gestae*. Respondent confuses the rule to the extent that res gestae is an exception to the *hearsay* rule.[4] And even when the res gestae rule is applicable, secondary evidence must come from the best source available. Thus the two rules sometimes work hand in hand.[5] We have no doubt that *the instrument* showing the figures claimed would have been admissible as a part of the facts and circumstances concerning the verbal contract. Salmons' Adm'rs v. Davis, 29 Mo. 176, 182; Lyons v. Corder, 253 Mo. 539, 162 S.W. 606, 608. As a matter of fact, *all* applicable statements and acts of the interested parties, and sometimes the surrounding circumstances, are admissible if they shed light on the purpose, meaning, and intent of the parties to an oral contract. Gibbons v. Chomeau & Engelland, 240 Mo.App. 41, 210 S.W.2d 715, 717–718; Keeton v. Sloan's Moving and Storage Company, Mo. App., 282 S.W.2d 194, 198. But that does not mean that those things shall not be shown by the best evidence available.

Passing appellant's second contention on the question of whether there was testimony of a demand (because a retrial of the case should result in testimony which is not so indefinite), we go to appellant's third assignment in reference to respondent's instruction 1. This instruction told the jury that if plaintiff was employed as project manager, and if he *"obtained a reduction on items of road construction from $152,000 to the sum of $105,000 and effected a savings of $47,000 on such projects"*; and if the contract of employment allowed a 10% payment to defendant and thereafter 10% of the net reduction was to be paid plaintiff, then plaintiff would be entitled to $4,230; and if plaintiff had received $1,600 toward payment thereof and demand had been made for $2,630 and defendant had failed to pay the same, then the verdict should be for the plaintiff.

There are several attacks upon this submission. One of them is that it ignores time of payment. We are of the opinion that the exception is well taken. Plaintiff's testimony (and the only testimony or evidence pertaining to the commission or bonus agreement) was that defendant said *"if I could save some money* on this job that he would pay a commission." "The agreement was *that I would receive the money when the job was completed."* All the evidence, including the testimony of the plaintiff, shows that the job was not completed when plaintiff was discharged. And the testimony of plaintiff's witness Mace and of the defendant Brezner was that the job was not completed at trial date and was running under a $200 per day penalty. The testimony of Mace, the man for whose bid plaintiff

465, 466; Martin v. Martinous, Mo.App., 219 S.W.2d 667, 675; State v. Lentz, 184 Mo. 223, 83 S.W. 970, 974; E. C. De Witt & Co. v. Buford, 173 Mo.App. 78, 155 S.W. 884, 885; Merrill Chemical Co. v. Nickells, 66 Mo.App. 678, 692; see Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250, 254.

4. McKenzie Transport Leasing Co. v. St. Louis Public Service Co., Mo.App., 349

S.W.2d 370, 372; Legger v. Great Northern Life Ins. Co., Mo.App., 216 S.W.2d 106, 109; State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, 46.

5. See Wilson v. Supreme Liberty Life Insurance Co., Mo.App., 343 S.W.2d 649, 651; Stephan v. Metzger, 95 Mo.App. 609, 69 S.W. 625; see Citizens' State Bank of Atlanta, Kan., v. Ferson, Mo. App., 208 S.W. 136; Housden v. Berns, 241 Mo.App. 1163, 273 S.W.2d 794, 799.

claims a commission, indicates that he had not yet, at trial time, finished his sub-contract.

Thus we have two possible elements involved in time of payment: (a) according to plaintiff's testimony it was to be when the job was completed, and (b) since the amount, if any, to be due was dependent upon what the plaintiff had "saved" the defendant by his activities, it would seem that the situation would require that the project be completed or so nearly completed as to permit a casting up of final cost against anticipated or estimated cost. The jury was not required to find either of these propositions, and in fact the evidence does not show that either event has occurred. The instruction simply *assumes* that a certain amount was due, as though the plaintiff were a broker instead of a project manager.

■ Ordinarily money is due and payable when there is a legal obligation to pay and the time set for payment has arrived. If *no* time is fixed, the law will deem the account payable when the payee has fully performed his obligation and nothing remains to be done except the payment. Unless a contrary intent appears, a consideration is ordinarily to be paid upon the accomplishment of the purpose or object for which the consideration moves.[6]

■ We gather from respondent's argument that he is of the opinion that he was wrongfully discharged and therefore the time of payment was accelerated and his "brokerage" fee became due and payable immediately, and that he was entitled to payment of a stated amount upon demand. We do not here decide whether such discharge was wrongful in fact or in law; but if this was plaintiff's theory it was entirely omitted from the instruction and the jury's consideration.

6. 17 C.J.S. Contracts § 503d(1), p. 1066; Doerflinger Realty Company v. Fields, Mo.App., 281 S.W.2d 609, 613; Vrooman v. City of St. Louis, 337 Mo. 933, 88 S.W.2d 189, 199; Swanson v. Spencer,

It is our judgment that the judgment should be reversed and remanded for a new trial. It is so ordered.

McDOWELL and STONE, JJ., concur.

177 Mo.App. 124, 163 S.W. 285, 286; Isaac T. Cook Company v. Bank of St. Louis, Mo.App., 297 S.W.2d 607, 611; Litchgi v. Gottlieb, 134 Mo.App. 237, 113 S.W. 1134, 1135.