STATE of Missouri,
Plaintiff-Respondent,

v.

Eugene Thomas FONTANA, alias
Nicholas John Devereux,
Defendant-Appellant.

No. 10834.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 1979.

Motion for Rehearing or Transfer
Denied Nov. 14, 1979.

Application to Transfer Denied
Dec. 6, 1979.

Richard D. Bender, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found Eugene Thomas Fontana guilty of first-degree robbery as defined and denounced by § 560.120, RSMo 1969, now repealed, and kidnapping, as proscribed by § 559.240, RSMo 1969, now repealed. Defendant's punishment has been assessed at imprisonment for a term of 30 years for first-degree robbery and 10 years for kidnapping. The trial court has ordered that the defendant's sentences run consecutively. Defendant appeals.

Defendant makes no contention that the evidence is not sufficient to support the convictions, and of course the State is entitled to have the record evidence and the reasonable inferences to be drawn therefrom taken most favorably to the result reached. *State v. Franco*, 544 S.W.2d 533, 534[1] (Mo. banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). So taken, the record warrants the following statement: During the evening of March 2, 1977, defendant went to the bar at the Howard Johnson Motel in Springfield, Missouri. He engaged H., the bartender, in conversation. H. is female; apparently she is a young woman. Defendant and H. conversed at length and during the course of their conversation H. told the defendant " . . . the bar was slow usually around midnight . . . only one or two people [around] the bar . . ."

The defendant returned to the bar the following evening, sat at the bar and or-

dered a drink. Having placed his order, he moved to the end of the bar nearest the cash register. He again engaged H. in conversation and requested that he be called at his room between 11:30 and 11:45 p. m. so he could meet a "business acquaintance" in the bar. H. was told to ask for "Nick" when she called.

Defendant left the bar, but returned about 11:30 p. m. and sat in the "same corner seat by the cash register." Three other customers came in the bar between 11:30 p. m. and midnight, but they left about midnight and defendant was alone in the bar until "legal closing time" while H. performed her "cleanup duties." H. finally removed the cash drawer (the "till") from the cash register and set it on the bar. It contained about $350. Defendant then approached H., ". . . stuck a gun[1] in [her] face and told [her] it was a robbery," and said ". . . stay calm."

The defendant then took "the till" and H. out through a door which opened onto the parking lot. He ordered his victim into his car, saying he was going to "take [H.] a short ways so he could get away." H. was taken to another motel, identified as the Interstate 8 Motel, a short drive from the Howard Johnson's. The defendant ordered his victim into one of the rooms, told her to disrobe and attempted to rape her. H. resisted and the defendant did not accomplish his purpose. The defendant then decided to leave. He ordered H. to dress. She did so, and was directed to lie face down on the bed. Defendant then ". . . tied [H.'s] feet and hands together behind [her] with [her] panty hose and took a pillow case [sic] off of one of the pillows . . . and gagged [her]." The defendant left. H. "laid there long enough to where [she] thought [defendant] wasn't still outside," then freed herself sufficiently to call the Springfield Police Department. The defendant was apprehended by Jasper County officers and this prosecution followed.

In this court, the defendant has contented himself with raising a single point on appeal. In the particular circumstances of this case, we find the point to be without merit, but inasmuch as this appeal is defendant's only appeal of constitutional right, *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), we have given the point careful consideration. Defendant's assignment of error, as stated, is that the trial "court erred in permitting Larry Parrill [sic] to testify . . . to the contents of the items of identification found on the defendant at the time of his arrest in lieu of producing those items, because said testimony constituted hearsay and violated the best evidence rule in that it was offered to prove the terms of a writing without production of the items of identification or explanation of their absence." The defendant has cited a number of cases, including *Baker v. Atkins,* 258 S.W.2d 16 (Mo.App. 1953), which discuss both hearsay evidence and the best evidence rule. The State advances the novel non sequitur that because Parill's testimony was used only to identify the defendant as Nicholas J. Devereux, the evidence cannot be classified as hearsay.

As just noted, the evidence objected to came from one Larry Parill. Parill was employed as a criminal investigator by the Sheriff of Jasper County, and was on duty in Carthage after the robbery and kidnapping had been committed. He received a radio dispatch from Greene County ". . . to be on the look-out [sic] for a . . . white male, dark-complected [sic], five-eleven, a hundred and eighty or two hundred pounds," who was driving ". . . a yellow, foreign car, out-of-state license, [and who was] wanted in connection with [robbery and] kidnapping." Before Parill testified it had been established that defendant was a white male of dark complexion, that he was wearing a yellow "leisure suit" and a flowered brown shirt. H. had testified that she described

---

1. The "gun" was introduced in evidence, together with the defendant's clothing and jewelry. The exhibits have not been filed here, but the firearm used by the defendant was described as a Harrington and Richardson .32 caliber revolver. When it was recovered, the revolver contained five live rounds.

the defendant, his clothing and his general appearance to police officers in Springfield when she reported the crime, and she had noticed and reported that defendant was driving a yellow Datsun automobile. Registration records at the Howard Johnson Motel, where the robbery took place, indicated that one Nicholas J. Devereux was registered there on March 3 and defendant had told H. his name was "Nick." It is therefore entirely reasonable to suppose that officer Parill would look for and would expect to find objects identifying a Nicholas Devereux if he encountered the defendant. On a pretrial motion to suppress evidence, Parill testified that "[a]t the time I arrested [defendant], his wallet contained credit cards and operator's license that checked to Nicholas John Devereux, which fit [defendant's] description . . . ."

Upon trial, the State's interrogation of officer Parill took him through his apprehension of the defendant, his seizure of clothing, including the yellow "leisure suit," and the .32 caliber revolver and then continued:

"Q. Now after that, did you have any occasion to look at any pieces of identification? A. Yes, sir.

[Defense counsel's objection was renewed and overruled]

Q. And what pieces of identification did you—

A. We found in his wallet was [sic] several credit cards and a driver's license.

Q. Now would you state what name was on those credit cards and driver's license?

A. The name on these credit cards and driver's license was Nicholas John Devereux.

Q. When you say Devereux, do you know how it's spelled?

A. No, not right offhand.

\* \* \* \* \* \*

THE WITNESS: If I had my report—if I could look at my report, I could tell you how it's spelled.

Q. (By the [Prosecuting Attorney]): Did you incorporate that into your report—

A. Yes, sir.

Q. —that *you made at the time*? A. Yes, sir." (Our emphasis)

The State thereupon asked the witness to refresh his memory by looking at his report; with permission of the trial court he did so and then answered that defendant's alias was spelled "D-e-v-e-r-e-u-x." Officer Parill's testimony indicated that the driver's license and credit cards were "turned over" to his chief deputy, who was his "evidence officer." The fair inference from the record is that the credit cards and the license were simply mislaid.

The objection is that admission of Parill's evidence concerning the spelling of defendant's alias violated the "best evidence" rule and constituted hearsay. It is not contended that it was improper to show defendant's criminal agency under an alias nor that the possession of the bogus documents might constitute evidence of an independent crime. We address only the objection stated and briefed.

It is common knowledge that drivers' licenses and credit cards are used as a means of identification, and we are in no doubt it was proper to establish defendant's identity by showing the name inscribed on those objects. As for the contention that nonproduction of those items violated the "best evidence" rule, that rule means, among other things, that in proving the terms of a writing, where its terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. *State v. King*, 557 S.W.2d 51, 53–54[1–3] (Mo.App.1977); *Padgett v. Brezner*, 359 S.W.2d 416, 422–423[3–5] and authorities cited nn. 2, 3 (Mo.App.1962); C. McCormick, Evidence § 230 (2d ed. 1972). The rule is easier to state than to apply. There are innumerable objects bearing inscriptions or legends which cannot logically be considered "writings." The terms of the legend or inscription may be relevant in a particular case, and questions then arise whether the inscribed object should be considered a writing and whether the original object should be produced or accounted for. Classification as a "writing" or as an "in-

scribed chattel" is not controlling, there is no inflexible rule, but the modern tendency is to grant to the trial court a considerable measure of discretion in determining whether the original should be produced if the object is an inscribed chattel. *United States v. Duffy*, 454 F.2d 809, 812[3] (5th Cir. 1972); 4 H. Wigmore, Evidence § 1182 (Chadbourn rev. 1972); McCormick, supra, § 232. And, of course, if the writing is subject to the "best evidence" rule, the trial court may nonetheless receive secondary evidence of its contents if the original is unavailable without serious fault on the proponent's part and the secondary evidence offered is trustworthy. An officer's personal recollection based on observation may constitute such evidence. *State v. King*, supra, 557 S.W.2d at 54[6][7][8].

We suppose a driver's license is a "writing"; such a document is an official grant of a privilege to a specifically designated person, and when the terms of the license are relevant, the original should be produced or accounted for. Cf. *Thurman v. St. Louis Public Service Co.*, 308 S.W.2d 680, 687–688 (Mo.1957); *Fayetteville Aviation, Inc. v. Insurance Company of North America*, 19 N.C.App. 557, 199 S.E.2d 485, 486–487[1] (1973). It is difficult to conceive of an ordinary plastic credit card as anything other than an inscribed chattel, designed for use in a simple machine.

We are in doubt that the "terms" of the license or the credit cards were in issue; if they were, we consider that non-production of the original driver's license was satisfactorily accounted for. There certainly is no indication of deliberate affirmative action to destroy the original or to prevent its production in court. Secondary evidence was admissible. In our view, the credit cards could not be considered "writings" in the context of this case. There was no violation of the "best evidence" rule.

The further contention that hearsay was admitted is obtusely made, and is likewise without merit. As indicated, Parill testified that he seized the driver's license and the credit cards at the time he apprehended defendant. He further testified that he copied defendant's alias onto a report which he prepared at that time. Upon trial, the only detail Parill could not remember concerning the alias was the spelling of the surname Devereux. He requested permission to consult his report to refresh his memory. He did not testify by reading the report but from memory, renewed and refreshed. As the State contends, a witness, in court and subject to cross-examination, may testify to what he observed through his four senses. *City of Webster Groves v. Quick*, 323 S.W.2d 386, 390 (Mo.App.1959). It was within the trial court's discretion to permit Parill to refresh his memory by consulting his report, and inasmuch as Parill's reference to his report did refresh his memory, it is of little moment whether the memorandum was prepared by Parill or another, or whether the "report" was an original or a copy. *State v. Freeman*, 489 S.W.2d 749, 752–753[7–11] (Mo.App.1973); McCormick, supra, § 9 at 16. There was no violation of the hearsay rule. In any event, the spelling of the alias upon the license and the credit cards was not crucial nor critical upon the issue of defendant's criminal agency. The defendant's identity was abundantly established by other competent evidence, and the testimony complained of could not have been prejudicial to the defendant.

■ Finally, it should be noted that the formal entry of judgment, sentence and commitment does not in terms recite the exercise of discretion on the part of the trial court in imposing consecutive sentences. Former § 546.480, RSMo 1969, provided, in basic substance, that if a criminal defendant were convicted of at least two offenses before he was sentenced for either, then the sentences pronounced would run consecutively. In *State v. Baker*, 524 S.W.2d 122, 129 (Mo. banc 1975), our Supreme Court held that to the extent it mandatorily required consecutive service of sentences solely because the defendant had committed multiple offenses, § 546.480 served no legitimate State interest and denied criminal defendants equal protection of the laws. The court also carefully pointed out that the imposition of consecutive

sentences does not of itself deny equal protection; the trial court is vested with discretion to determine whether, in the circumstances, the sentences should run concurrently or consecutively. *State v. Baker*, supra, 524 S.W.2d at 130–131. From the effective date of that decision our courts have consistently held that when consecutive sentences are imposed after conviction of multiple offenses in a single trial, the record must show that the consecutive sentences were imposed in the exercise of discretion; otherwise remand for the exercise of that discretion will be ordered. See *State v. Eldridge*, 543 S.W.2d 500, 501[4] (Mo.App.1975); *State v. Mullen*, 532 S.W.2d 794, 800[11] (Mo.App.1975).

It is doubtless better practice for the trial court to recite in the formal entry of judgment, sentence and commitment that consecutive service of the sentences is ordered in the exercise of discretion. However, the record on appeal shows that the propriety of imposing consecutive sentences was argued in open court upon allocution. The defendant was present with counsel. Defendant's counsel argued that the sentences should run concurrently; the State argued that because of the gravity of the offenses committed and the existence of a prior conviction, the sentences should run consecutively. The trial court then imposed consecutive sentences. The record shows the exercise of discretion; the cause need not be remanded so the formal entry may recite that fact.

No reversible error appears; therefore the judgment is in all respects affirmed.

All concur.