Randy WHITE and Elbert Harris, d/b/a
Hyde Park Center Developers, L.P.,
Appellants,

v.

LAND CLEARANCE FOR REDE-
VELOPMENT AUTHORITY,
et al., Respondents.

No. WD 44882.

Missouri Court of Appeals,
Western District.

Sept. 15, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Oct. 27, 1992.

Application to Transfer Denied
Dec. 18, 1992.

Irving Achtenberg, Kansas City, for appellants.

Frederick Riesmeyer, II, Kansas City, for Land Clearance.

Howard D. Lay & Janet I. Blauvelt, Kansas City, for Luzier.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

SPINDEN, Presiding Judge.

Hyde Park Center Developers, Land Clearance for Redevelopment Authority (LCRA), and Luzier Personal Cosmetics, Inc., are involved in a dispute over who gets to develop a tract of land in Kansas City. Hyde Park and Luzier were competitive bidders for the project. LCRA first chose Hyde Park, but then it gave the project to Luzier when Hyde Park defaulted on its contract obligations.

Hyde Park sued LCRA. It claimed that LCRA had no justification for taking the project away from it. It sued Luzier and LCRA on the ground that each interfered with its ability to perform its contract obligations.

LCRA and Luzier countersued. LCRA sued to collect damages suffered when Hyde Park defaulted. Luzier claimed that it would have won the project bid at the outset if Hyde Park had not maliciously interfered.

LCRA was the only party to obtain a jury award. The jury awarded it $3120.85 for damages caused by Hyde Park's default. Hyde Park and Luzier lost on all counts, and they appeal. We affirm.

## Facts

The dispute arose when Randy White decided to develop a shopping center at Linwood and Gillham in Kansas City, a tract within LCRA's domain. LCRA was empowered to enter into contracts to assist any redeveloper in preparing a redevelopment plan and to acquire the real estate for a redevelopment project. In June 1986, White and two partners asked LCRA to declare the tract an urban renewal area and to award them a redevelopment contract to put a shopping center there.

In September 1986, LCRA decided to move ahead with the project and called for proposals. Of concern to LCRA was Luzier's production plant on the site. The request for proposals encouraged "a response which would not require the displacement of the main Luzier Cosmetics operations."

Cohen Properties proposed to develop a 56,000 square-foot retail center in partnership with Luzier at a cost of $3.5 million. The center's owners would pay full taxes and would finance it entirely from private funds. It promised to leave Luzier's operations at the site.

A month later, White proposed to form a partnership, to be known as Hyde Park, which would develop an 85,000 square-foot retail center at a cost of $6.8 million. His proposal called for a 10–year tax abatement for the owners, and $700,000 of the cost was to be raised from public sources. He proposed relocation of the Luzier plant.

On January 7, 1987, LCRA chose to award the project to Hyde Park. White set about to organize the limited partnership. On June 25, 1987, he entered into a limited partnership agreement with three other individuals under the name Hyde Park Center Developers L.P. The Missouri Secretary of State issued a certificate of limited partnership to Hyde Park on July 13, 1987.

In the meantime, Hyde Park and LCRA entered into two contracts on July 9, 1987: a redevelopment contract and a funding and acquisition agreement. The funding and acquisition agreement required Hyde Park to furnish "an active pay letter of credit, or some other device providing immediately available funds in form satisfac-

tory to [LCRA], in the amount [of $25,-000.]" It also required Hyde Park to "provide [LCRA] with a standing letter of credit in the amount of $10,000 issued by a financial institution agreed to by both parties[.]" Both provisions were to be satisfied by July 14, 1987.

On July 24, 1987, Hyde Park had not filed letters of credit. LCRA's attorney notified Hyde Park that LCRA deemed it to be in default. She told Hyde Park that LCRA intended to terminate the agreement if it did not cure the defaults by August 3, 1987.

By the close of LCRA's business on August 3, 1987, Hyde Park still had not produced the letters of credit. At about 10:00 P.M. on August 3, White placed a cover letter and two checks under the front door of the LCRA office. The two checks, one in the amount of $18,220.85 and the other in the amount of $10,000, were drawn upon the account of The Provo Group, Inc. These were the correct amounts due to cure the default. The Provo Group was not affiliated with Hyde Park, but White had been negotiating with it to become a partner.

The next day, LCRA returned the checks to Hyde Park with a cover letter which stated, "Enclosed are two checks ... which were discovered on the floor inside the door of [LCRA's] offices when [LCRA] opened for business on August 4, 1987. We hereby return these checks to you." On the same day, LCRA's attorney wrote White that because Hyde Park had not filed letters of credit with LCRA "as of the close of business on August 3, 1987," LCRA had terminated its contracts with Hyde Park.

On September 23, 1987, LCRA rescinded the contracts with Hyde Park. On October 19, 1987, LCRA entered into contracts with Luzier Plaza Associates, a partnership between Luzier and Cohen Properties, for the project.

## LCRA Breach of Contract

█ Hyde Park's first contention is, in effect, a complaint that the trial court should have granted it a directed verdict on its claim that LCRA breached the contract.

Hyde Park did not ask for a directed verdict, so it makes a somewhat contorted contention that the trial court should have granted it either a judgment notwithstanding the verdict or a new trial. It also challenges under this point an instruction concerning LCRA's affirmative defense, Instruction No. 8.

■ A party is not entitled to a judgment n.o.v. if it does not ask for a directed verdict. Rule 72.01(b). Denial of an after-trial motion, such as a motion for new trial, is not an appealable order. The appeal must be taken from the judgment to which the motion was directed. *Pittman v. Reynolds*, 679 S.W.2d 892 (Mo.App.1984). LCRA raised both of these points in a motion to strike Hyde Park's point. Because Hyde Park's notice of appeal stated that it appealed "from judgment on jury verdicts," we conclude Hyde Park's point was just unartfully worded and, indeed, it was appealing the trial court's judgment. We deny LCRA's motion to strike Hyde Park's point. We presume Hyde Park to be challenging the sufficiency of the evidence supporting the jury's verdict.

■ Insufficiency of the evidence to support a verdict is a proper ground for reversing a judgment only if the jury's verdict is not supported by any competent evidence or the evidence supporting it lacks probative force. Such is not the case here. The jury heard an abundance of competent evidence that LCRA had good reason to reject the Provo Group checks and to demand letters of credit. "[O]nce the circumstance sufficient to support [an] inference appears or can be found in the evidence, the ultimate issue must be submitted to the jury and [an appellate] court as well as the trial court must necessarily abide the verdict rendered by the jury." *Winters v. Terminal Railroad Association of St. Louis*, 363 Mo. 606, 252 S.W.2d 380, 384 (1952).

■ Hyde Park also challenges LCRA's affirmative defense instruction. Hyde Park argues that the instruction was flawed: (1) It did not conform to Hyde Park's verdict director; (2) it did not allege that LCRA made a demand on Hyde Park to perform; and (3) it erroneously set the default cure date as July 14, 1987, instead of August 3, 1987.

The instruction, No. 8, stated:

Your verdict must be for defendant LCRA on plaintiff Hyde Park Center Developers, L.P.'s claim for breach of contract against defendant LCRA if you believe:

First, under the terms of the agreement, plaintiff Hyde

Park Center Developers, L.P. agreed to

furnish to defendant LCRA a $10,000.00 standing letter of credit issued by a financial institution agreed to by both parties, and

furnish defendant LCRA an active pay letter of credit or some other device providing immediately available funds in a form satisfactory to defendant LCRA in the amount of $18,220.85, and

Second, plaintiff Hyde Park Center Developers, L.P. was

required to provide both letters of credit on or before July 14, 1987, and

Third, plaintiff Hyde Park Center Developers, L.P. failed

to satisfy these requirements of the agreement and thereby breached that agreement, and

Fourth, due to plaintiff Hyde Park Center Developers,

L.P.'s breach of that agreement, defendant LCRA was justified in terminating the agreement.

Hyde Park's first point, that the instruction did not "track" the verdict director, is without merit. The instruction was not a converse of the verdict director and, therefore, did not need to "track" it.

■ In its second point, Hyde Park complains that the instruction did not allege that LCRA made a demand on Hyde Park to perform, one of the elements in the instruction in *Beuc v. Morrissey*, 463 S.W.2d 851 (Mo. banc 1971), after which LCRA modeled Instruction No. 8. "[Demand] was an element of the instruction in *Beuc* and more strongly required here," Hyde Park asserts, "because the contracts

both specifically require notice of default (demand) and a cure period (at least until August 3, 1987) before LCRA could terminate."

■ We agree that LCRA could not terminate the contract until 10 days after it sent Hyde Park written notice of its intention to terminate, and this was not included in the elements of Instruction No. 8. We fail to understand, however, how Hyde Park was prejudiced. The jury heard evidence that LCRA sent notice and that LCRA waited 10 days after the notice to terminate. Hyde Park does not deny that it obtained the notice. Including the element in Instruction No. 8 would not have made any difference in the jury's deliberation. It is not error for an instruction to assume an uncontroverted fact. *Weisman v. Herschend Enterprises, Inc.*, 509 S.W.2d 32 (Mo.1974).

Hyde Park's third point is that the instruction erroneously used a default date of July 14 rather than August 3. By the contract's terms, the letters of credit were due by July 14, which is what the instruction's second element states. Hyde Park wrongly characterizes the due date as August 3. That date was the deadline for curing the default gratuitously granted by LCRA. Hyde Park's failure to file by August 3 justified LCRA's termination of the contract, which is what the fourth element states. We find no fault with the instruction.

### Hyde Park's Claim of Tortious Interference Against LCRA

■ Hyde Park accused LCRA of tortiously interfering with Hyde Park's business expectations: maliciously preventing Hyde Park from proceeding with the redevelopment project. The trial court directed a verdict in favor of LCRA on this count. Hyde Park argues that this was error. It contends that it established a submissible case that LCRA breached the contract with Hyde Park with the intent of awarding the project to Luzier. We disagree.

■ An action for inducing a breach of contract will lie against only a third party, not a party to the subject contract. *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976 (1953); *Restatement of Torts*, § 766. A party to the contract cannot be held responsible for inducing himself to commit a breach or for conspiring to breach it. To hold otherwise would be tantamount to permitting recovery of punitive damages in a contract action, which the Supreme Court of Missouri has declared to be improper. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896 (Mo. banc 1990).

### LCRA's Counterclaim

■ Hyde Park then complains about the jury's award of $3120.85 to LCRA on LCRA's counterclaim against Hyde Park. Hyde Park argues that the award was not supported by substantial and competent evidence and that LCRA did not establish a basis in the contract for seeking damages from Hyde Park. We disagree.

The jury heard LCRA's planning director, Mark Bunnell, testify to the amount of time the LCRA staff spent on the project and how much LCRA paid its attorneys to enforce the contract. Hyde Park challenges this evidence as hearsay and not the "best evidence." Hyde Park argues that LCRA cannot support its claim without offering checks, disbursement records and invoices.

Although Missouri courts cling to the "best evidence" misnomer,[1] they have, in perhaps a move toward the overwhelming majority view, become more tolerant of what constitutes the "best evidence." In *Aluminum Products Enterprises, Inc. v. Fuhrmann Tooling and Manufacturing Company*, 758 S.W.2d 119 (Mo.App.1988), this court's Eastern District permitted a

---

1. Professor McCormick states, "While some modern opinions still refer to the 'best evidence' notion as if it were today a general governing legal principle[,] most would adopt the view of modern textwriters that there is no such general rule." *McCormick's Handbook of the Law of Evidence* § 229, at 60–61 (4th ed. 1992). He footnotes a single case, *Padgett v. Brezner*, 359 S.W.2d 416 (Mo.App.1962), in contrast to the second edition of his treatise in which he footnoted the Padgett case along with cases from Alabama and Oklahoma.

company president to testify concerning information which also was in company records present in the courtroom. The court commented:

> [T]he fact that a witness refers to records that contain all or part of the same information that he testifies to based on his personal knowledge does not render his testimonial evidence incompetent and an objection based on the best evidence rule is not well taken.
>
> ... Plaintiff was not attempting to prove the contents of the records, books and invoices by oral evidence. [The company president's] testimony was that he had computed the damages based on his personal knowledge and experience; only after an objection did he refer to the invoices upon which his knowledge was partially based. *The best evidence rule does not apply to exclude evidence based on personal knowledge even if the documents would have provided some of the same information.*[2]

*Id.* at 122. The information to which Bunnell testified was based on his personal knowledge. That the same information may have been recorded in LCRA records did not render his testimony incompetent as either hearsay or excluded by the best evidence rule.

LCRA's claim for damages was based on § III.F of the funding and acquisition agreement. That section provided:

> If [Hyde Park] fails to provide the funding for the acquisition herein referred to and the costs and expenses related thereto ..., [Hyde Park] hereby agrees to pay all costs, expenses and fees of the [LCRA], including reasonable attorneys' fees, incurred in enforcing or attempting to enforce or collect any monies owing by [Hyde Park] pursuant to this Agreement.

This provision was clear authority for LCRA's claim. We find no merit in Hyde Park's contention.

### Hyde Park's Claim of Tortious Interference with Contract against Luzier

■ The jury found for Luzier on Hyde Park's claim that Luzier interfered with Hyde Park's contract with LCRA. Hyde Park contends that the verdict should be reversed on two grounds.

It first complains that LCRA's affirmative defense instruction prejudiced its claim against Luzier because "[a]n essential element of [Hyde Park's] claim against Luzier for tortious interference was that [Hyde Park] had fully performed its obligations under the contracts and LCRA was not entitled to terminate them." We have already concluded that the instruction was proper, so we deny Hyde Park's point.

It then complains that the verdict directing instruction misstated the law. That instruction stated:

> Your verdict must be for Plaintiff Hyde Park Center Developers, L.P. and against Defendant Luzier Personalized Cosmetics, Inc., on plaintiff's claim of tortious interference with contract, if you believe:
>
> First, a Redevelopment Contract and a Funding and Acquisition Agreement existed between plaintiff and Land Clearance for Redevelopment Authority which were terminated by Land Clearance for Redevelopment Authority, and
>
> Second, Defendant Luzier Personalized Cosmetics, Inc.
>
> caused Land Clearance for Redevelopment
>
> Authority to terminate its Redevelopment
>
> Contract and its Funding

---

**2.** We added the emphasis. This rendition of the rule is close to Professor McCormick's version: "[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than *the serious fault of* the proponent." *Id.,* § 230, at 61. Contrast this statement of the rule and the Eastern District's comments in the Aluminum Products case with *Padgett v. Brezner,* 359 S.W.2d 416, 422 (Mo. App.1962): "It is an elementary principle of law that the best evidence of which the case in its nature is susceptible and which is within the power of the party to produce, or is capable of being produced, must always be produced in proof of every disputed fact."

and Acquisition Agreement with Plaintiff Hyde Park Center Developers, L.P., and

Third, Defendant Luzier Personalized Cosmetics, Inc. did

so intentionally and without justification or

excuse, and

Fourth, plaintiff was damaged.

Hyde Park acknowledges that the instruction follows MAI 23.11 (3d ed. 1981), but contends that the form was modified by *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799 (Mo.App.1987). Hyde Park points to the second element of the instruction in the *Honigmann* decision: "Second, defendant [ ...][3] caused or contributed to cause the Dixie Cream Flour Company to terminate the business expectancy of plaintiff[.]" *Id.* at 810. Hyde Park contends that insertion of the phrase "or contributed to cause" was a modification of MAI 23.11, and so the phrase should have been inserted into Luzier's instruction. Hyde Park is wrong. The noted phrase was not at issue in *Honigmann.* It was addressing only a contention that "reasonable" should have been inserted before business expectancy. Earlier in the decision, the *Honigmann* court set out the elements of intentional interference with contract and used MAI 23.11 as its source. *Id.* at 808. The *Honigmann* court did not intend a modification.

Rule 70.02(b) governs, and it provides, "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case which the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other on the same subject." MAI 23.11 was the proper instruction to submit to the jury.

### Luzier's Counterclaim of Tortious Interference With Business Expectancy

 Luzier counterclaimed against Hyde Park, accusing Hyde Park of interfering with its expectation of obtaining the redevelopment contract with LCRA. The LCRA staff had recommended acceptance of Luzier's proposal, and Luzier contended that, but for Hyde Park's interference, LCRA would have accepted its proposal. The jury found for Hyde Park. On appeal, Luzier contends that the trial court erroneously rejected four of its proffered instructions.

Luzier complains that the trial court erred in submitting instructions naming Hyde Park instead of its individual partners. Luzier contends that Hyde Park did not exist until at least June 25, 1987, and, therefore, its action necessarily had to be against Hyde Park's individual partners.

While the instruction was technically in error, we must determine whether the error was prejudicial before it is reversible error. *Fowler v. Park Corporation*, 673 S.W.2d 749 (Mo.1984). "Prejudice exists," Luzier argues, "because the jury understandably would find the Limited Partnership that did not yet exist could not be responsible for a tort six months earlier than creation of the L.P." We disagree. The jury received evidence indicating that on October 31, 1986, White submitted a proposal in the name of Hyde Park. White indicated in the proposal that a limited partnership to be known as Hyde Park Center Developers would be organized at a later date. The litigants made reference to White and Hyde Park interchangeably throughout the proceedings. We conclude that the jury was not confused by the instruction.

### Luzier's Motion for Damages for Frivolous Appeal

 Luzier asked this court to determine that Hyde Park's appeal was frivolous and to award it damages pursuant to Rule 84.19. We decline. An appeal is frivolous if it presents no justiciable question and is so recognizably void of merit on the face of the record that there is little prospect that it can succeed. *Community Bank of Chillicothe v. Campbell*, 813 S.W.2d 40, 45 (Mo.App.1991). While the points raised by Hyde Park were not strong, we do not deem them to be frivolous.

---

**3.** This is as it appears in the original.

## Conclusion

We find no reversible error in the points raised by the parties. We affirm the trial court's judgments.

All concur.